Don GILMAN, Kenai Peninsula Borough Mayor, Francis Brymer, Borough Clerk, Phillip Waring, Borough Planning Director, and Elroy Barton, Finance Director, Appellants,

v.

Harry V. MARTIN, Larry C. Zervos, Garland Dean Thompson and Harry V. Martin, a Kenai Peninsula Borough Assemblymember, Appellees.

No. 5937.

Supreme Court of Alaska.

April 1, 1983.

Adrienne P. Fedor, Robert C. Erwin, Erwin, Smith & Garnett, Anchorage, and Andrew Sarisky, Kenai Borough Atty., Soldotna, for appellants.

Carl A. Larson, Kenai, for appellees.

Robert M. Maynard, Asst. Atty. Gen., Wilson L. Condon, Atty. Gen., Juneau, for amicus curiae State of Alaska.

Before BURKE, C.J., RABINOWITZ and COMPTON, JJ., and JOHNSTONE, Superior Court Judge.*

## OPINION

COMPTON, Justice.

This appeal concerns the validity of the land sale lottery ordinance enacted by the Kenai Peninsula Borough ("the Borough"). The superior court entered a declaratory judgment that the ordinance authorizing the lottery violates the equal protection clauses of the United States and Alaska Constitutions because it requires participants to have been residents of the Borough for one year preceding their applications and because participants may file an unlimited number of applications for any parcel of land upon payment of a nonrefundable $10.00 fee for each application. The superior court further declared that the ordinance violates the statute prohibiting certain forms of gambling in the state.

We conclude that the ordinance does not violate the statute prohibiting unlawful gambling. We agree with the superior

---

* Johnstone, Superior Court Judge, sitting by assignment made pursuant to Alaska R.App.P. 106(a).

court, however, that the ordinance is unconstitutional insofar as it requires participants to have been residents of the Borough for one year preceding their applications. We also conclude that the ordinance is unconstitutional to the extent that it grants a five percent reduction in the sale price of a parcel for each year of residency in the Borough, up to a maximum reduction of fifty percent. This provision violates the equal protection clause of the United States Constitution for the same reasons that the initial distribution plan for the permanent fund dividend program was held unconstitutional in *Zobel v. Williams*, —— U.S. ——, 102 S.Ct. 2309, 72 L.Ed.2d 672 (1982) (*Zobel III*).

## I. FACTUAL AND PROCEDURAL BACKGROUND

In September 1979, the Kenai Peninsula Borough Assembly enacted Ordinance 79–53, which is entitled, "Providing for the Disposal of Certain Parcels of Borough Selected Lands by Lottery Sale." This ordinance authorizes the sale by lottery of certain Borough lands at fair market value to persons who file applications within ten days of the lottery. Section 4(3) of the ordinance provides that, in order to be eligible for the lottery, the applicant must be a resident of the Borough for at least one year immediately prior to the sale. Section 3(7) provides that there shall be a five percent reduction in the sale price "for each full year of Borough residence up to a maximum credit of 50%." No limitation is placed on the number of applications that may be filed by a person for a particular parcel, so long as a nonrefundable $10.00 fee is paid for each application.

The first lottery sale was scheduled to take place in Kenai, Alaska, on October 20, 1979. Harry Martin, a member of the Kenai Peninsula Borough Assembly, objected to the sale because he believed Ordinance 79–53 to be unconstitutional. On October 4, 1979, Martin filed a complaint in the superior court against the Mayor, Clerk, Planning Director and Finance Director of Kenai Peninsula Borough (hereinafter collectively referred to as "the Borough"). Martin sought a declaratory judgment that the ordinance is invalid, as well as an injunction against the scheduled lottery sale. On October 19, 1979, Martin amended his complaint to include two additional plaintiffs, Larry Zervos and Garland Thompson, neither of whom was eligible to participate in the scheduled lottery sale under the provisions of the ordinance.

A preliminary injunction was issued, restraining the Borough from holding the lottery sale until the constitutional issues raised by the plaintiffs were adjudicated on the merits. The parties subsequently filed cross-motions for summary judgment. The only significant issue raised in these motions that has not already been referred to is the argument made by the Borough that none of the plaintiffs has standing to maintain this action.

The superior court determined that there were no material issues of fact in dispute and, therefore, the case could properly be resolved by summary judgment. The court concluded that the plaintiffs have standing to maintain the action. On the merits, the court concluded that the one-year residency requirement bears no rational relationship to the stated objectives of the ordinance and thus the residency requirement violates the equal protection clause of the fourteenth amendment to the United States Constitution, as well as the equal protection clause of article I, section 1, of the Alaska Constitution. The court further concluded that the ordinance violates the statute prohibiting certain forms of gambling in Alaska because it establishes a lottery. The court accordingly enjoined the Borough from enforcing or implementing the ordinance.

The Borough appeals from this judgment. It contends that the superior court erred in determining that the plaintiffs have standing to maintain the action and further erred in determining that the ordinance is invalid in any respect.

## II. STANDING

We first consider the argument of the Borough that none of the plaintiffs has

standing to maintain this action. Harry Martin has been a resident of Kenai for a substantial period of time and was a member of the Kenai Peninsula Borough Assembly at the time Ordinance 79–53 was enacted. Martin contends that he has standing both in his individual capacity and in his representative capacity as an elected official. The superior court concluded that Martin has no standing as an individual, presumably on the basis that Martin is eligible to participate in the lottery sale and thus has not sustained any "injury in fact" from the enactment of the allegedly unconstitutional ordinance. The court concluded, however, that Martin does have standing as an elected official. The court stated, "Having taken an oath to uphold the Constitution of the State of Alaska and the Constitution of the United States, plaintiff Martin has a duty and ethical obligation to challenge any ordinance passed by the assembly of which he was a member and which he opposed."

We need not review the court's conclusion that Martin has standing as an elected official because we hold, contrary to the superior court, that he has standing as an individual. In *Moore v. State,* 553 P.2d 8 (Alaska 1976), we addressed the issue of standing:

[T]he concept of standing has been interpreted broadly in Alaska, favoring increased accessibility to judicial forums. In *Coghill v. Boucher,* 511 P.2d 1297, 1303 (Alaska 1973), we noted that "[i]n the past ... this court has departed from a restrictive interpretation of the standing requirement."

Whether a party has standing to obtain judicial resolution of a controversy depends on whether the party has a sufficient personal stake in the outcome of the controversy. In our recent decision of *Wagstaff v. Superior Court, Family Division,* 535 P.2d 1220, 1225 (Alaska 1975), we described this requirement in terms of "injury-in-fact," and explained that its purpose is to assure the adversity which is fundamental to judicial proceedings.

553 P.2d at 23 (footnotes omitted).

■ Martin has been a resident and taxpayer of Kenai for many years. Prior to the issuance of the injunction prohibiting the Borough from conducting the lottery sale, the Borough had spent over $36,000.00 in administrative and publishing costs for the proposed lottery, at which approximately 825 acres were to be sold. Any resident or taxpayer of a municipality has a sufficient interest in the disposition of a significant number of acres of the municipality's land to seek a declaratory judgment as to the validity of the disposition. Thus, as a resident and taxpayer of Kenai, Martin has a sufficient personal stake in the outcome of this controversy to assure the adversity that is fundamental to judicial proceedings.

■ The standing of plaintiffs Larry Zervos and Garland Thompson is obvious. Garland Thompson has resided in the Kenai Peninsula Borough since August 20, 1979. He would have been ineligible to participate in the lottery sale scheduled for October 20, 1979, because at that time he had not resided in the Borough for one year. Thompson challenges the provision of the ordinance requiring one-year residence in the Borough. Thompson has sustained an "injury in fact" from this residency requirement and thus has a sufficient personal stake in the outcome of the controversy.

Larry Zervos has resided in Anchorage since December 4, 1978. He would have been ineligible to participate in the lottery sale scheduled for October 20, 1979, because he had not resided in the Kenai Peninsula Borough for one year at that time. Zervos challenged the provision in the ordinance requiring residence in the Borough. As with Thompson, it is apparent that Zervos has sustained an "injury in fact" from this residency requirement and thus has a sufficient personal stake in the outcome of the controversy.

## III. CRIMINAL LOTTERY

■ We next address whether Ordinance 79–53 is invalid on the basis that it violates the statute prohibiting certain forms of gambling in the state. AS 11.66.200 states in part: "(a) A person commits the offense of gambling if he engages in *unlawful* gam-

bling." (Emphasis added.) "Unlawful" is defined in AS 11.66.280(11) as "not specifically authorized by law." AS 11.66.280(2) defines gambling as follows:

> "[G]ambling" means that a person stakes or risks something of value upon the outcome of a contest of chance or a future contingent event not under his control or influence, upon an agreement or understanding that he or someone else will receive something of value in the event of a certain outcome.

The superior court concluded that Ordinance 79–53 violated AS 11.60.010 because the ordinance set up a lottery. The court stated:

> By payment of the consideration of $10.00, an applicant may make unlimited filings on a particular parcel of property. Whether or not the particular applicant is selected is purely chance, and the prize that he or she gains by that selection is the right or option, which is a valuable property right, to purchase property from the borough.

Even assuming that the superior court correctly decided that the land sale lottery constitutes a form of gambling,[1] we conclude that the lottery does not violate AS 11.60.010 because it is specifically authorized by law and is, thus, not "unlawful gambling." AS 29.48.260(d) specifically states, "The assembly or council [of a municipality] may by ordinance establish a formal procedure for the acquisition from the state of land or rights in land and the disposal of the land or rights in land, in which event the [other] provisions of . . . this section do not apply." The Kenai Peninsula Borough has, in the exercise of its statutory powers, authorized the sale by lottery of land acquired from the state in its enactment of Ordinance 79–53.

In accordance with article X, section 1, of the Alaska Constitution, AS 29.48.310 provides that "[a] liberal construction shall be given to all powers and functions of boroughs and cities conferred in this title." AS 29.48.320 states that "[u]nless otherwise limited by law, boroughs and cities have and may exercise all powers and functions necessary or fairly implied in or incident to the object or purpose of all powers and functions conferred in this title." In view of the permissibility of sales of state land by lottery,[2] we conclude that the Kenai Peninsula Borough properly exercised its "fairly implied" power to authorize the sale by lottery of its lands acquired from the state.

We further conclude that Ordinance 79–53 is not invalid even though it arguably conflicts with AS 11.60.010. As we stated in *Jefferson v. State,* 527 P.2d 37, 43 (Alaska 1974):

> A municipal ordinance is not necessarily invalid in Alaska because it is inconsistent or in conflict with a state statute. The question rests on whether the exercise of authority has been prohibited to municipalities. The prohibition must be either by express terms or by implication such as where the statute and ordinance are so substantially irreconcilable that one cannot be given its substantive effect if the other is to be accorded the weight of law.

*Accord City of Kodiak v. Jackson,* 584 P.2d 1130, 1132 (Alaska 1978); *Johnson v. City of Fairbanks,* 583 P.2d 181, 184 (Alaska 1978); *Simpson v. Municipality of Anchorage,* 635 P.2d 1197, 1200 (Alaska App.1981). Municipalities have not been expressly prohibited from authorizing land sale lotteries and Ordinance 79–53 is not irreconcilable with AS

---

1. Arguably, the lottery does not constitute gambling as defined in AS 11.66.280(2). The statute only specifies that a person engages in gambling when he or she *"stakes* or *risks* something of value." (Emphasis added.) When a person pays a $10.00 deposit, accompanying each application, to participate in the lottery, he or she does not "stake" or "risk" something of value; the person completely divests himself or herself of any interest in the fee paid. In the words of the Ordinance, the deposit is "nonrefundable" and therefore not at risk. Ordinance 79–53(4)(1).

2. AS 38.05.057 specifically authorizes the state to dispose of land by lottery: "The commissioner may dispose of land, including land limited to use for agricultural purposes, by lottery."

11.60.010; the statute only prohibits gambling not authorized by law and Ordinance 79–53 is a law authorizing land sale lotteries. We thus conclude that the Borough's land sale lottery does not violate Alaska's statute prohibiting unlawful gambling.

## IV. RESIDENCY REQUIREMENT

Ordinance 79–53 provides that only residents of the Kenai Peninsula Borough are eligible to participate in the land lottery. The Borough contends that the superior court erred in concluding that this requirement violates the equal protection clauses of the United States and Alaska Constitutions.[3] We disagree.

 The parties mistakenly address this issue in terms of whether or not the requirement of residency in the Borough impermissibly burdens the constitutional right to interstate or intrastate travel. The right to interstate or intrastate travel is impinged upon only when a governmental entity creates distinctions between residents based upon the duration of their residency, and not when distinctions are created between residents and nonresidents. In *McCarthy v. Philadelphia Civil Service Commission,* 424 U.S. 645, 96 S.Ct. 1154, 47 L.Ed.2d 366 (1976), the United States Supreme Court discussed its prior decisions concerning the right to interstate travel and stated:

> Neither in those cases, nor in any others, have we questioned the validity of a condition placed upon municipal employment that a person be a resident *at the time* of his application. In this case, appellant claims a constitutional right to be employed by the city of Philadelphia *while* he is living elsewhere. There is no support in our cases for such a claim.
>
> We have previously differentiated between a requirement of continuing residency and a requirement of prior residen-

cy of a given duration. Thus in *Shapiro* [*v. Thompson*], [394 U.S. 618, 636, 89 S.Ct. 1322, 1332, 22 L.Ed.2d 600, 616 (1969)], we stated: "[T]he residence requirement and the one-year waiting-period requirement are distinct and independent prerequisites." And in *Memorial Hospital* [*v. Maricopa County*], [415 U.S. 250, 255, 94 S.Ct. 1076, 1080, 39 L.Ed.2d 306, 313 (1974)], quoting *Dunn* [*v. Blumstein*], [405 U.S. 330, 342 n. 13, 92 S.Ct. 995, 1003 n. 13, 31 L.Ed.2d 274, 284 n. 13 (1972)], the Court explained that Shapiro and Dunn did not question the " 'validity of appropriately defined and uniformly applied bona fide residence requirements.' "

424 U.S. at 646–47, 96 S.Ct. at 1155, 47 L.Ed.2d at 368–69 (emphasis in original) (footnote omitted).

This does not mean that the residency requirement is free from scrutiny under the equal protection clauses of the United States and Alaska Constitutions; it only means that the requirement is not subject to the strict scrutiny applied when a fundamental right, such as some aspects of the right to interstate travel, is at issue.[4] The appropriate standard by which to measure the constitutionality of the residency requirement is, at a minimum, that which we announced in *Isakson v. Rickey,* 550 P.2d 359 (Alaska 1976): " '[T]he classification "must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike." ' " 550 P.2d at 362 (quoting *State v. Wylie,* 516 P.2d 142, 145 (Alaska 1973)). Article VIII, section 17, of the Alaska Constitution states, "Laws and regulations governing the use or disposal of natural resources shall apply equally to all persons similarly situated with reference to the sub-

---

**3.** Section 1 of the fourteenth amendment to the United States Constitution provides, "No state shall ... deny to any person within its jurisdiction the equal protection of the laws." Section 1 of article I of the Alaska Constitution states that "all persons are equal and entitled to equal

rights, opportunities, and protection under the law."

**4.** Not all statutes burdening the right to interstate travel are measured by the strict scrutiny standard. *Sosna v. Iowa,* 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975).

ject matter and purpose to be served by the law or regulation." This constitutional provision may require a more stringent review of the Borough's ordinance. We need not decide the issue, however, because it is apparent that the ordinance does not pass even the lower standard of review.

The stated purpose of the land lottery is to sell "certain parcels of Borough selected lands ... to adjoining property owners or to leaseholders so as to resolve existing controversies regarding access and title." Kenai Peninsula Borough Ordinance 79–53. At the time of the scheduled lottery sale, fifty-six percent of the privately owned parcels of property located within the Borough were owned by persons who were not residents of the Borough. Accordingly, resident and nonresident landowners of the Borough are not treated equally, even though they are similarly situated with reference to the sale of Borough lands to "adjoining property owners or to leaseholders so as to resolve existing controversies regarding access and title." The plaintiffs correctly argue that denying nonresidents, who own the majority of property within the Borough, the right or opportunity to purchase contiguous parcels or other parcels of land offered for sale by the Borough does not bear a substantial relation to the purpose of the ordinance.

The Borough contends that its discrimination against nonresidents in Ordinance 79–53 is not unconstitutional. The land subject to sale under the ordinance is part of the 155,780 acres received from the state in fulfillment of the general grant land entitlement of the Borough pursuant to AS 29.18.201.[5] The Borough states that one of the purposes of the state's grant of the land to it was to permit the Borough to sell the land to its residents. It concludes that all boroughs may limit the sale of land received from the state to residents of the boroughs.

The Borough's analysis might have been worthy of consideration if the Borough had stated in Ordinance 79–53 that the purpose of the lottery was to benefit its residents.[6] The ordinance, however, does not state this. Instead, it specifically indicates that the purpose of the lottery is to sell selected parcels of land to "adjoining property owners or to leaseholders so as to resolve existing controversies regarding access and title." Although governmental entities need not "deal alike with all ... classes, or ... strike at all evils at the same time or in the same way," *Semler v. Oregon State Board of Dental Examiners,* 294 U.S. 608, 610, 55 S.Ct. 570, 571, 79 L.Ed. 1086, 1089 (1935), underinclusive classifications violate the equal protection clause if the classification is "clearly wrong, [and] a display of arbitrary power, [rather than] an exercise of judgment." *Mathews v. De Castro,* 429 U.S. 181, 185, 97 S.Ct. 431, 434, 50 L.Ed.2d 389, 394 (1976). *Accord Minnesota v. Clover Leaf Creamery Co.,* 449 U.S. 456, 466, 101 S.Ct. 715, 725, 66 L.Ed.2d 659, 670 (1981); *McClain v. City of South Pasadena,* 155 Cal.App.2d 423, 318 P.2d 199, 207 (Cal.App.1957); L. Tribe, American Constitutional Law § 16–4, at 997 (1978). In view of the avowed purpose of the sale to "resolve existing controversies regarding access and title" to properties, the decision of the Borough to restrict the sale of its land to Borough residents—and thereby assist only forty-four percent of the landowners in resolving existing controversies regarding access and title—is a "display of arbi-

---

**5.** AS 29.18.201 provides, "The general grant land entitlement of each of the municipalities in this section is the amount set out opposite each: ... (7) Kenai Peninsula Borough—155,-780 acres."

**6.** We note, however, that "discrimination on the basis of residence must be supported by a valid ... interest independent of the discrimination itself. *Zobel III,* 457 U.S. 55, 70, 102 S.Ct. 2309, 2318, 72 L.Ed.2d 672, 684 (Brennan, J., concurring). Furthermore, as we indi-

cated in *Lynden Transport, Inc. v. State,* 532 P.2d 700, 711 (Alaska 1975), "Benefiting [the] economic interests of residents over nonresidents is not a purpose which may constitutionally vindicate discriminating legislation ...." We do not hold that residency requirements are *per se* invalid. At the least, however, when a purpose is stated for the requirement, the purpose must be a valid one that is substantially furthered by the classification.

trary power," rather than "an exercise of judgment." The classification is unreasonable and does not "'rest upon some ground of difference having a fair and substantial relation to the [avowed] object of the legislation, so that all persons similarly circumstanced [are] treated alike.'" *Isakson v. Rickey,* 550 P.2d at 362 (quoting *State v. Wylie,* 516 P.2d at 145). We therefore agree with the superior court that Ordinance 79–53 is unconstitutional to the extent it requires participants to have been residents of the Borough at the time of their applications.[7]

## V. REDUCTION IN PRICE

The last issue we consider is the constitutionality of the provision in Ordinance 79–53 that provides for a five percent reduction in the sale price of a parcel for each year of residency in the Borough, up to a maximum reduction of fifty percent in the sale price.[8] This issue was not raised by the parties in their cross-motions for summary judgment, nor was it considered by the superior court when it rendered its decision. Under these circumstances, we normally would not consider it. *E.g., Anchorage Asphalt Paving Co. v. Lewis,* 629 P.2d 65, 70 (Alaska 1981); *Hill v. Ames,* 606 P.2d 388, 390 (Alaska 1980); *Jeffries v. Glacier State Telephone Co.,* 604 P.2d 4, 7 (Alaska 1979). This is not, however, a typical case. Since the superior court entered its judgment, the United States Supreme Court has issued its decision in *Zobel III,* 457 U.S. 55, 102 S.Ct. 2309, 72 L.Ed.2d 672 (1982). *Zobel III* so obviously calls into question the constitutionality of reducing the price in the sale of government lands based on length of residence, we have chosen to address the issue in this case. *See Wright v. Vickaryous,* 598 P.2d 490, 499 (Alaska 1979) ("This court ... may notice a claim not raised below to prevent a miscarriage of justice."). Accordingly, we requested the parties to file supplemental briefs discussing the impact of *Zobel III* on this case. We also invited the state to file a brief as amicus curiae because the Alaska Land Act, AS 38.05.005–.370, contains a similar provision granting discounts based on length of residency.[9]

---

7. Having determined that the requirement that participants be residents of the Borough is unconstitutional, we necessarily conclude that the one-year durational residency requirement, intended to assure bona fide residence, is also unconstitutional. We note that if a residency requirement is constitutional, "length of residence may ... be used to test the bona fides of citizenship." *Zobel III,* 457 U.S. at 70, 102 S.Ct. at 2318, 72 L.Ed.2d at 684 (Brennan, J., concurring). The duration of residence required, however, must be reasonable and bear a substantial relation to the governmental purpose sought to be achieved. *Isakson v. Rickey,* 550 P.2d 359, 362 (Alaska 1976).

8. We summarily reject the plaintiffs' argument that Ordinance 79–53 violates the equal protection clauses of the United States and Alaska Constitutions because participants may file an unlimited number of applications for any parcel of land upon payment of a nonrefundable $10.00 fee for each application. The plaintiffs contend that this creates a classification based upon wealth. Assuming *arguendo* that this is so, it is only necessary that this aspect of the Ordinance be "'reasonable, not arbitrary, and ... rest upon some ground of difference having a fair and substantial relation to the object of the legislation.'" *Isakson v. Rickey,* 550 P.2d at 362 (quoting *State v. Wiley,* 516 P.2d at 145). The object of Ordinance 79–53 is to sell parcels

of land by lottery. Permitting participants to file an unlimited number of applications upon payment of a $10.00 fee for each application bears a fair and substantial relationship to this object. The Borough is entitled to defray the costs of the lottery by charging a fee for applications. It is within the discretion of the Borough whether to charge a greater fee and permit participants to file only one application or to charge only $10.00 per application and permit participants to file an unlimited number of applications. The Borough's decision to do the latter does not violate any principle of equal protection.

9. AS 38.05.058(a) provides:

The commissioner shall grant to eligible persons a discount on the purchase price of land sold which is classified for any use other than commercial or industrial under AS 38.-05.005—38.05.270 at the rate of five per cent of the purchase price of the land purchased for each full year that the purchaser is a resident of the state. A discount granted under this section may not exceed 50 per cent of the total purchase price of the land or a value of $25,000, whichever amount is less, except that an eligible veteran is entitled to receive a discount under this section which may not exceed 75 per cent of the total pur-

In *Zobel III,* the United States Supreme Court held that the initial distribution plan for the permanent fund dividend program, AS 43.23.010, violated the equal protection clause of the fourteenth amendment because it did not rationally further any legitimate state purpose. We believe the same infirmity exists in the discount provisions of Ordinance 79–53.

The state correctly notes that the majority opinion in *Zobel III* only held that the retrospective award of payments, based on number of years of residence since statehood in 1959, was unconstitutional. The Court specifically stated, "We need not consider whether the State could enact the dividend program prospectively only." 457 U.S. at 64, 102 S.Ct. at 2315, 72 L.Ed.2d at 680. The dicta in that opinion, however, and the concurring opinions of Justice Brennan (with whom three other justices joined) and Justice O'Connor strongly suggest that the Court would hold such a program unconstitutional if it were to decide the issue. In his concurring opinion, Justice Brennan states, "A scheme of the sort adopted by Alaska is inconsistent with the Federal structure *even in its prospective operation.*" 457 U.S. at 67, 102 S.Ct. at 2316, 72 L.Ed.2d at 682 (Brennan, J., concurring) (emphasis added). Justice O'Connor indicated that she believed the entire dividend program was unconstitutional because it violated the privileges and immunities clause of article IV of the United States Constitution. 457 U.S. at 78, 79, 102 S.Ct. at 2322, 2323, 72 L.Ed.2d at 689, 691. (O'Connor, J., concurring). Thus, five justices—a majority of the court—indicated that they would hold even a prospective program unconstitutional.

The state contends that price discount programs are distinguishable from the permanent fund dividend disbursement program struck down in *Zobel III* because the discount programs do rationally further a legitimate government purpose; namely, inducing residents to remain in their communities and/or Alaska. The state suggests that there were initially two purposes sought to be fulfilled by price discount programs: first, rewarding residents for past contributions, and second, providing an incentive for residents to remain. The state concedes that in view of the holding in *Zobel III* —that residents cannot be rewarded for past contributions measured simply by length of residence in the state—the first purpose cannot be relied upon to justify the price discount programs. The state argues, however, that the second purpose—inducing residents to remain—is a legitimate government purpose and the price discount programs rationally further it. We cannot agree with this analysis.

It is undoubtedly true that some persons may remain in their community or in the state to take advantage of the increasing discounts available to them in the purchase of government lands and thus the price discount programs do further the purpose of inducing residents to remain. This incentive, however, is produced by creating various classes of concededly bona fide residents, based on how long they have been in the state or in their community. We read *Zobel III* as prohibiting this.

As the state indicates, the Court in *Zobel III* struck down a program that created "fixed, permanent distinctions between an ever increasing number of perpetual classes of concededly bona fide residents, based on how long they have been in the State." 457 U.S. at 59, 102 S.Ct. at 2312, 72 L.Ed.2d at 677. There are only ten classes of residents created by the price discount provision of Ordinance 79–53, inasmuch as the maximum discount of fifty percent, granted at five percent per year, is reached upon ten years of residency in the Borough. Furthermore, the classes are not fixed or permanent because, after ten years, all residents receive the fifty percent discount and are thus treated equally. Ten years, however, is a substantial period of time for " 'some citizens [to be] more equal than others.' " 457 U.S. at 58, 102 S.Ct. at 2312, 72 L.Ed.2d at 685 (Brennan, J., con-

chase price of the land or $37,500, whichever amount is less. A discount may be used by

an eligible veteran to purchase land offered at a restricted sale under AS 38.05.067.

curring). "[T]he Citizenship Clause of the Fourteenth Amendment expressly equates citizenship only with simple residence. That Clause does not provide for, and does not allow for, degrees of citizenship based on length of residence. And the Equal Protection Clause would not tolerate such distinctions." 457 U.S. at 69, 102 S.Ct. at 2317–18, 72 L.Ed.2d at 683–84 (footnotes omitted).

To the extent that discounts are granted for years of residence completed prior to the enactment of the ordinance, it is not even a close question that Ordinance 79–53 is unconstitutional. Paraphrasing the Court in *Zobel III,* "Assuming arguendo that granting [five percent discounts] for each year of continued [Borough] residence might give some residents an incentive to stay in the [Borough] in order to reap increased [five percent discounts] in the future, the [Borough's] interest is not in any way served by granting greater [discounts] to persons for their residence during the [ten] years prior to the enactment." 457 U.S. at 62, 102 S.Ct. at 2313, 72 L.Ed.2d at 678–79 (footnote omitted). Thus, the avowed purpose of inducing residents to remain in the Kenai Peninsula Borough is not rationally furthered by granting price discounts to persons for their years of residence antedating the enactment of the ordinance.

We further hold that it is impermissible for the Borough to apply its price discount program prospectively, as well, because the program cannot be implemented without creating a multitude of classes of residents that receive a benefit correlating to their length of residence. With respect to the purchase price of government lands, no le-

gitimate interest justifies the disparate treatment of bona fide residents based solely upon the length of their residence.[10] We accordingly hold that the provision of Ordinance 79–53 granting reductions in the purchase price of Borough lands based upon length of residence is unconstitutional as violating the equal protection clauses of the United States and Alaska Constitutions.[11]

AFFIRMED in part and MODIFIED in part.

RABINOWITZ, Justice, dissenting in part.

I disagree with that portion of the court's opinion which holds that the Kenai land lottery ordinance is not "unlawful gambling" in violation of AS 11.66.200.

First, I think it clear that the Kenai lottery falls within the definition of "gambling" supplied in AS 11.66.280(2).[1] In *State v. Pinball Machines,* 404 P.2d 923, 925 (Alaska 1965), we held that "the essential elements of gambling are price, chance, and prize. Thus, one gambles when he pays a price for a chance to obtain a prize." (Footnote omitted.) There is no requirement that the value placed at risk be refundable, as the majority suggests in footnote 1 of the opinion. The interpretation offered by the majority would allow any form of gambling where the initial stake is not returned to the winner.

Second, I construe AS 11.66.200 as precluding municipal governments from legalizing gambling within their jurisdictions. The court correctly notes that this statute does not reach forms of gambling "specifi-

---

**10.** Even if discounts were granted for a shorter period of time than ten years, which would result in less than a "multitude of classes of residents," we would closely scrutinize the discount program to determine that it was not in fact created for the impermissible purpose of granting residents a reward, albeit in the future, for their past contributions to Alaska. *See Zobel III,* 457 U.S. at 62, 102 S.Ct. at 2313, 72 L.Ed.2d at 679.

**11.** The constitutionality of AS 38.05.058(a), *supra* note 9, is not before this court and we thus cannot directly consider the issue. The fact

that the state discount program has been in operation since 1978 may or may not raise special considerations that are not before the court in this case.

**1.** AS 11.66.280(2) provides in part that
"gambling" means that a person stakes or risks something of value upon the outcome of a contest of chance or a future contingent event not under his control or influence, upon an agreement or understanding that he or someone else will receive something of value in the event of a certain outcome . . . .

cally authorized by law." *See* AS 11.66.-280(11). The purpose of this exception was to avoid conflicts between the anti-gambling law and other state statutes authorizing certain games of chance which otherwise would fall within the gambling prohibition.[2] *See* AS 05.15.100. There is simply no trace within the legislative history of an intent to delegate to municipalities the power to authorize gambling.

2. This view is supported by the legislatively adopted commentary to the criminal code:

The definition of "unlawful" [§ 11.66.-280(11)] provides that no gambling practice is lawful unless it is specifically authorized by statute. *See generally,* AS 05.15 (Bingo, Raffles and Ice Pools).

1978 Alaska Senate Journal Supp. No. 47 at 114 (June 12, 1978), *reprinted in* Alaska Criminal Code Manual 3–266 (1980).

In addition to other statutes, the "authorized by law" language seems directed toward the gambling statute itself. AS 11.66.200(b) exempts "social game[s]," defined in AS 11.66.-280(9), from prohibition. The official commentary notes that the exception for social games was one of the few significant reforms in gambling law made by the new code. 1978 Alaska Senate Journal Supp. No. 47 at 112, *reprinted in* Alaska Criminal Code Manual 3–265. Thus, even though the "friendly poker game" falls within the statutory definition of gambling, it is not "unlawful gambling" under 11.66.200(a), because it is authorized by law.