**D. Paul HOBLIT, Appellant,**

v.

**COMMISSIONER OF NATURAL RESOURCES, State of Alaska, Appellee.**

No. 7148.

Supreme Court of Alaska.

March 16, 1984.

---

G. Kent Edwards, Hartig, Rhodes, Norman, Mahoney & Edwards, Anchorage, for appellant.

Madeleine R. Levy, Asst. Atty. Gen., Anchorage, and Norman C. Gorsuch, Atty. Gen., Juneau, for appellee.

Before BURKE, C.J., RABINOWITZ and COMPTON, JJ., and BUCKALEW and SERDAHELY, Judges [*].

## OPINION

RABINOWITZ, Justice.

Paul Hoblit appealed a decision by the Commissioner of Natural Resources to sell state land to Hoblit's neighbor Stephen Nathanson. The superior court dismissed Hoblit's appeal for lack of standing. Hoblit now brings this appeal from the superior court's ruling. Hoblit's standing to challenge the administrative decision is the sole issue in this appeal.

## I. FACTS AND PROCEEDINGS BELOW

Under AS 38.05.035(b)(3), the director of the Division of Lands may

> grant a preference right to a claimant who shows bona fide improvement of state land, or federal land subsequently acquired by the state, and who has in good faith sought to obtain title to the land but who, through error or omission of others, has been denied title to it; upon a showing satisfactory to the commissioner, the claimant may lease or purchase the land at the price set on the date of original entry on the land or, if a price was not set at that time at a price determined by the division to fairly represent the value of unimproved land at the time the claim was established, but in no event less than the cost of administra-

tion including survey; the error or omission of a predecessor in interest or an agent, administrator, or executor which has clearly prejudiced the claimant may be the basis for granting a preference right. . . .

On September 14, 1967, Nathanson applied for a preference right to purchase approximately 20 acres of land located on Ismailof Island, in Kachemak Bay, near Homer. After initially rejecting Nathanson's application, the Division reversed itself in May of 1976, advising the Commissioner of Natural Resources that Nathanson might be eligible for a preference right to purchase the land.

The Deputy Commissioner eventually approved Nathanson's application on October 14, 1977. The purchase price was set at the fair market value of the land at the time Nathanson first applied for a preference right. While surveying was taking place, Nathanson's representative requested a waiver of the 25-foot shoreline easement, stating that Nathanson would agree to an alternate 40-foot public easement to connect existing trails to the airstrip on Ismailof Island. He also suggested that the state reserve a 200-foot wide easement for the west end of the airstrip.

On August 27, 1979, the Division issued a "Preliminary Decision and Final Finding" granting Nathanson his preference right to purchase the land. That decision waived the shoreline easement and reserved upland public easements instead. Public notice of the preference right award was published in the Homer News on November 1, 8, 15, and 22, 1979. No notice was given that only upland, rather than shoreline, easements would be reserved, although the notice did mention that "public easements are incorporated into the survey plat." The notice also stated that:

> Any comments, objections, or expressions of interest pertaining to the proposed action must be received by the

---

[*] Buckalew and Serdahely, Superior Court Judges, sitting by assignment made pursuant to Article IV, Section 16, of the Constitution of Alaska.

Division of Forest, Land and Water Management ... on or before 4:30 p.m., December 15, 1979, in order to be considered.

No comments or objections were received by that date. An appraisal of the land was done in May 1980 and accepted by the Division of Lands on June 12, 1980. Nathanson's purchase price was set at $4,800.00.

On July 15, 1980, Hoblit's attorney wrote to the Department of Natural Resources objecting to the survey of Nathanson's land. Hoblit objected to both the substitution of upland for shoreline easements, and the reservation of an airstrip easement. The Commissioner of Natural Resources reviewed Hoblit's objections and concluded that the preference right was properly granted.

Hoblit, through his attorney, persevered, informing the Attorney General's office of the problems with the Nathanson file. The Attorney General assigned an investigator to determine whether there were factual errors in the Nathanson file at the Department of Natural Resources. Based on the investigator's report, the Attorney General on June 23, 1981, recommended that the Commissioner of the Department of Natural Resources re-open Nathanson's preference right case. The Commissioner reconsidered the matter and reaffirmed his decision that Nathanson qualified for a preference right to purchase the land under AS 38.05.035(b)(3).

Hoblit then appealed the Commissioner's decision to the Superior Court. There the state moved to dismiss Hoblit's appeal on the ground that Hoblit lacked standing to appeal the Commissioner's decision.[1] Hoblit opposed the motion, claiming he had standing as a taxpayer, as a property owner, and as a representative of the public interest.

The superior court held a hearing on the state's motion to dismiss. At that hearing, the court inquired of Hoblit's counsel what "factual basis" he had for the claim that the Commissioner's decision to sell the land to Nathanson would increase the likelihood of trespass on Hoblit's land.[2] In response, counsel for Hoblit attempted to explain how the Division's decision to reserve upland, rather than shoreline, easements over Nathanson's land would divert pedestrian traffic onto Hoblit's land. Additionally, Hoblit's counsel amplified his alternative contention that Hoblit had standing as a taxpayer.

In granting the state's motion to dismiss, the superior court concluded, as to Hoblit's 'standing as taxpayer' theory, that:

> Mr. Hoblit has not shown an injury to himself as a taxpayer resulting from the sale of this property to Nathanson, and therefore he has no direct stake in the outcome of this case in his capacity as a taxpayer ....

As to the standing as property owner theory, the superior court concluded that the

---

**1.** This motion was based on Appellate Rules 203 and 601.

> *Rule 203. Supervision and Control of Proceedings.*
> The supervision and control of the proceedings on appeal is in the appellate court from the time the notice of appeal is filed with its clerk, except as otherwise provided in these rules. The appellate court may at any time entertain a motion to dismiss the appeal, or for directions to the trial court, or to modify or vacate any order made by the trial court in relation to the prosecution of the appeal, including any order fixing or denying bail.

Rule 203 is made applicable to an administrative appeal to the Superior Court by Rule 601:

> *Rule 601. Scope of Part Six.*

> (a) Part Six of these rules (Rules 601 through 611) applies to requests to the superior court to review decisions of the district court or an administrative agency under AS 22.10.020(a) and AS 22.15.240(a), either by appeal or by petition for review.
> (b) On any point not addressed in Part Six, procedure in appeals to the superior court shall be governed by the provisions of Parts Two and Five of these rules, and procedure in petitions for review to the superior court shall be governed by the provisions of Part Four of these rules.

**2.** The trespass theory was the basis for Hoblit's asserted standing as a property owner.

threat of increased trespass on Hoblit's property was "pure speculation at best." [3]

## II. STANDING

In *Moore v. State*, 553 P.2d 8, 23 (Alaska 1976), in regard to the subject of standing we said:

As previous decisions of this court indicate, the concept of standing has been interpreted broadly in Alaska, favoring increased accessibility to judicial forums. In *Coghill v. Boucher*, 511 P.2d 1297, 1303 (Alaska 1973), we noted that "[i]n the past ... this court has departed from a restrictive interpretation of the standing requirement."

Whether a party has standing to obtain judicial resolution of a controversy depends on whether the party has a sufficient personal stake in the outcome of the controversy. In our recent decision of *Wagstaff v. Superior Court, Family Division*, 535 P.2d 1220, 1225 (Alaska 1975), we described this requirement in terms of "injury-in-fact," and explained that its purpose is to assure the adversity which is fundamental to judicial proceedings. (Footnotes omitted.)

Standing was more recently discussed in *Carpenter v. Hammond*, 667 P.2d 1204, 1210 (Alaska 1983). There we observed:

In *State v. Lewis*, 559 P.2d 630 (Alaska 1977), *appeal dismissed*, 432 U.S. 901, 97 S.Ct. 2943, 53 L.Ed.2d 1073 (1977), citizens/taxpayers challenged the constitutionality of a three-way exchange of land between Alaska, the United States government, and a native regional corporation. Although the plaintiffs did not establish any injury to their personal interests, we held that the plaintiffs' status as citizens constituted a sufficient personal stake in the controversy to guarantee "the adversity which is fundamental

to judicial proceedings." *State v. Lewis*, 559 P.2d at 635. In reaching this conclusion we stressed the following factors: that plaintiffs alleged the violation of two specific constitutional provisions; that the disputed transaction would have a significant impact on the state treasury; and that there was no one in a better position than plaintiffs to litigate the complaint. *Id.* at 635.

■ Therefore, the relevant inquiry is whether the party asserting standing has a sufficient 'personal stake' in the outcome of the controversy to ensure the requisite adversity.

### A. Standing as Taxpayer

Hoblit relies on two Alaska cases to support his 'standing as taxpayer' theory. The first is *State v. Lewis*, 559 P.2d 630 (Alaska 1977) (summarized in the passage from *Carpenter v. Hammond* quoted above), where we recognized the standing of citizens challenging an exchange of land between the State, the United States, and a native regional corporation. In finding standing for the plaintiffs in *Lewis*, we limited the decision to the particular facts of that case:

Although in many respects this case is a typical taxpayer or citizen action, we do not now decide whether our liberal interpretation should be extended to permit standing in all such suits. We hold only that under the particular facts involved here, plaintiffs have alleged a sufficient personal stake in the outcome of the controversy to guarantee "the adversity which is fundamental to judicial proceedings."

---

**3.** The superior court also reasoned that "the public interest theory ... is not really a basis for standing at all because ... the party must first establish an economic injury sufficient to create the standing...." We agree that representation of the public interest will not itself confer standing unless the plaintiff first demonstrates a sufficient 'personal stake' in the outcome of the controversy. A court will not reach constitutional questions unless the litigant raising them has demonstrated that he has been injured in fact by the allegedly illegal measures. *Younker v. CFEC*, 598 P.2d 917, 920–21 (Alaska 1979). However, we note that the plaintiff need not show an economic injury, since other interests have been recognized by this court as sufficient to accord standing. *State v. Lewis*, 559 P.2d 630, 635 (Alaska 1977), *appeal dismissed* 432 U.S. 901, 97 S.Ct. 2943, 53 L.Ed.2d 1073 (1977).

559 P.2d 630, 634–35 (footnotes omitted). We identified one important consideration in *Lewis* as

> the magnitude of the transaction and its potential economic impact on the State. Plaintiffs have claimed that participation in the land transfer will result in losses to the estate [sic] treasury and the taxpayers of vast sums of money.

*Id.* at 635.

At oral argument, counsel for Hoblit cited *Gilman v. Martin*, 662 P.2d 120 (Alaska 1983), as further support for his taxpayer-status standing. In *Gilman*, residents of the Kenai Peninsula Borough sued to enjoin a proposed land sale lottery, alleging constitutional and statutory violations. On appeal the Borough challenged plaintiffs' standing. In holding that plaintiff Martin had standing, we stated in part that:

> Any resident or taxpayer of a municipality has a sufficient interest in the disposition of a significant number of acres of the municipality's land to seek a declaratory judgment as to the validity of the disposition.

662 P.2d at 123.

■ Relying on this language, counsel for Hoblit argues that any Alaska taxpayer has standing to challenge any disposition of state land. We reject this extension of *Gilman*. The controlling inquiry in *Gilman*, as in all standing cases, was whether the plaintiff had a sufficient personal stake in the outcome of the controversy. This inquiry must turn on the facts of each case. *Flast v. Cohen*, 392 U.S. 83, 101, 88 S.Ct. 1942, 1953, 20 L.Ed.2d 947, 962 (1968).

In the case before us, Nathanson's parcel of land is less than twenty acres. This amount of acreage is not "significant" within the meaning of *Gilman*, and we decline to extend *Gilman* to the instant case.

■ Similarly, we conclude that *State v. Lewis*, 559 P.2d 630, does not require the conclusion that Hoblit has standing. The "magnitude of the transaction and its potential economic impact on the State" which were determinative in *Lewis* are simply lacking here. In short, Hoblit, as a taxpayer, has not demonstrated a sufficient 'personal stake' in the outcome of this controversy to give him standing to challenge the state's decision to sell the land to Nathanson.

### B. Standing as Property Owner

Hoblit further argues that the state's decision to reserve upland easements, rather than shoreline easements, over the Nathanson parcel will somehow direct pedestrians onto Hoblit's land, increasing the number of trespassers. When asked, at the hearing on the motion to dismiss, what factual basis supported this assertion of injury in fact, Hoblit's counsel observed that only the shoreline easement ran the entire length of the island.[4] Explaining the increased trespasses theory further, Hoblit's counsel argued that the upland easements reserved by the state would connect with existing easements to lead beach-strollers inland and ultimately onto Hoblit's land. He further intimated that the island's mountainous terrain would force pedestrians, once they left the beach and ventured inland, to traverse Hoblit's land.

■ The superior court acted in its appellate capacity in ruling on the state's motion to dismiss.[5] Hoblit, as discussed previously, only participated in the latter stages of the Department's deliberations. His eligibility to request reconsideration of the Department's decision to sell Nathanson the parcel was not challenged by that agency. Consequently, there was no occasion for Hoblit to even assert, let alone develop, his increased trespasses theory before the Department. He first articulated the theory in his opposition to the state's motion to dismiss his appeal in the superior

---

**4.** When asked whether there was a dedicated easement on Hoblit's own land (which includes shoreline), Hoblit's counsel first stated that such an easement did exist, and then indicated uncertainty on that question.

**5.** *See* Alaska Rules of Appellate Procedure 601–611.

court. As a result, the superior court, in ruling on the motion, evaluated the factual arguments of Hoblit's counsel without the benefit of a developed record. The difficulties inherent in such a task are apparent from the transcripts of the hearing and of the court's order of dismissal. Faced with this paucity of facts, the superior court concluded that the trespass theory was too speculative a basis upon which to premise Hoblit's standing. For the reasons explained below, we conclude that Hoblit is entitled to an evidentiary hearing to enable him to substantiate his trespass theory.

Under Appellate Rule 609,[6] the superior court has the power to order an evidentiary hearing to aid it in its appellate jurisdiction. The superior court's discretionary decision not to order such a hearing in this case likewise forces this court to review the superior court's ruling on Hoblit's standing without the benefit of a fully developed record. Since Hoblit has not had an opportunity to introduce evidence to support his increase in trespasses theory,[7] and since such evidence would aid both the superior court, and this court if necessary, in ruling on the issue of Hoblit's standing, we conclude that a remand to the superior court is appropriate. On remand, the superior court should hold an evidentiary hearing, and make findings of fact and conclusions of law, on the question of whether the state's election to reserve upland easements rather than shoreline easements over Nathanson's parcel is likely to increase the number of trespassers on Hoblit's land.[8]

Accordingly, this case is REMANDED to the superior court for further proceedings consistent with this opinion.[9]

MATTHEWS and MOORE, JJ., not participating.

---

6. *Rule 609. Powers of Superior Court.*

After notice of appeal to the superior court has been given, the superior court shall have power to make such orders as are necessary and proper to aid its appellate jurisdiction. In its discretion the superior court may in lieu of an appeal, grant a trial de novo in whole or in part. If such trial de novo is granted, the action shall be considered as having been commenced in that court at the time the record on appeal is filed. All further proceedings in such action shall be governed by the rules governing procedure in the superior court, except that no summons nor any amended or additional pleadings shall be served unless authorized or required by the court. The hearing or trial of the action shall be upon the record thus filed and upon such evidence as may be produced in the superior court.

7. *Cf. Douglas v. Glacier State Tel. Co.*, 615 P.2d 580, 590 n. 23 (Alaska 1980) (recognizing that where a Civil Rule 12(b)(6) motion is converted into a motion for summary judgment, the opposing party has the right to a "reasonable opportunity" to present pertinent evidentiary material).

8. Without limiting the evidence or issues which the parties may choose to present or raise at such a hearing, we suggest that the following subjects should be addressed:

1) whether there presently exists a continuous shoreline easement around the island;
2) how the terrain of the island may control or affect the direction of pedestrian traffic;
3) which of the existing easements on the relevant part of the island are sufficiently free from vegetation to allow pedestrian traffic;
4) whether there presently exists any substantial problem with trespassers on Hoblit's land;
5) whether the state has elected to reserve a shoreline easement across the Nathanson parcel.

9. On remand the superior court should also determine whether or not Hoblit has standing pursuant to Alaska's Administrative Procedure Act as interpreted in *Ketchikan Retail Liquor Dealers Association v. State, Alcoholic Beverage Control Board*, 602 P.2d 434, 439 (Alaska 1979). In regard to this alternative standing claim of Hoblit, the superior court should make requisite findings of fact and conclusions of law concerning both the adequacy of the notice given by the state of its proposed sale to Nathanson and the extent to which the Division allowed Hoblit to participate in the administrative decision regarding that sale.