Loyd R. **MESSERLI,** Appellant, Cross–Appellee,

v.

**DEPARTMENT OF NATURAL RESOURCES, STATE OF ALASKA,** Esther C. **Wunnicke,** Commissioner, Appellee, Cross–Appellant.

**Nos. S–1735, S–2188, S–2069 and S–2226.**

Supreme Court of Alaska.

Feb. 17, 1989.

---

Ronald D. Flansburg, Boyko, Davis, Dennis, Baldwin & Breeze, Anchorage, for appellant/cross-appellee.

Elizabeth J. Barry, Asst. Atty. Gen., Anchorage, Grace Berg Schaible, Atty. Gen., Juneau, for appellee/cross-appellant.

Before MATTHEWS, C.J., and RABINOWITZ, BURKE, COMPTON and MOORE, JJ.

COMPTON, Justice.

## I. INTRODUCTION

These consolidated appeals arise out of the granting of a preference right to Loyd Messerli by the Commissioner of the Alaska Department of Natural Resources (DNR). Messerli filed two lawsuits in connection with the preference right. In the first appeal, Messerli challenges a decision of Judge John Bosshard III finding no procedural irregularities in the DNR's granting of his preference right. The state appeals Judge Bosshard's finding of estoppel against it and his decision to award attorney's fees to Mr. Messerli. In the second appeal, Messerli challenges the decision of Judge Milton M. Souter denying him a preliminary injunction.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Messerli entered onto a 160 acre tract of land under the federal homestead law in June 1959. He cleared one-half acre, erected a tent and helped neighbors build a road to the north shore of a lake adjoining the land. Messerli also bought a one-half interest in an airplane and learned to fly as the property was accessible only by air.

Soon after Messerli entered the land, problems arose with respect to the validity of his claim. The Bureau of Land Management (BLM) ultimately cancelled his claim, and in 1964 his case was closed.

In the years that followed, Messerli continued his efforts to obtain title to the land. In 1977, Messerli applied for a preference right from the state under AS 38.05.035(b).[1]

---

1. AS 38.05.035(b) provides in part:
   The director may

   .   .   .   .   .

   (2) grant preference rights for the lease or purchase of state land without competitive bid in order to correct errors or omissions of a state or federal administrative agency when inequitable detriment would otherwise result to a diligent claimant or applicant due to situations over which the claimant or applicant had no control; the exercise of this discretionary power operates only to divest the state of its title to or interests in land and may be exercised only
   (A) with the express approval of the commissioner; and

DNR denied the application. After further dispute, in March 1984 Messerli succeeded in persuading newly appointed DNR Commissioner Esther Wunnicke to reopen his file.

Commissioner Wunnicke decided to offer a preference right under AS 38.05.035(b)(2) with conditions. Because the original homestead tract was no longer owned by the state, Messerli was given 150 days to nominate up to 160 acres in a compact, contiguous tract. The selection was limited to land designated for settlement in the Susitna Area Plan (the Plan). The selection was subject to the constitutional requirement of public notice and a best interest finding.

Messerli's original entry was in a region entitled the Willow Sub-basin. The sub area is nearly surrounded by the Plan although it appears to be jurisdictionally separate for planning purposes. The Plan itself contains 15.8 million acres; approximately 130,000 acres are designated for settlement. At Messerli's request the Director of the Division of Land and Water Management agreed to allow Messerli to expand his search area beyond the Susitna area. He also agreed to allow Messerli to choose up to four separate parcels not to exceed 160 acres and stated that a 30–day extension to the 150–day extension could be granted.

In June 1984 Messerli chose 102 acres of land above Potter Marsh in Anchorage. In August 1984 Messerli selected his remaining acreage—58 acres at Jack Bay in the Municipality of Valdez.

The Commissioner denied both selections. She belatedly notified Messerli that she disapproved of the Director's decision to expand the selection area, and she overruled his decision. She again indicated that Messerli's selection must be one contiguous and compact tract within the area designated for settlement by the Plan. She cautioned that "it is not my intent that the preference right be exercised on a value-for-value basis, but rather on the basis of acre for acre." Messerli claims this is the first time that he learned that the basis of the preference right would not be value for value. The Commissioner also granted Messerli another ninety days to select a parcel.

DNR and Messerli continued their efforts to locate a suitable parcel. In October 1984, Dale Tubbs, Messerli's land consultant, conducted a search of land records for all lands within the Plan. (15.8 million acres) Tubbs concluded "[n]o areas having a comparable setting to your original claim on Carpenter Lake were found to exist." Tubbs had established several criteria for evaluating the parcels. These included: amenities such as lake front or river front location and trees; development opportunity; reasonable road or plane access; "good" soils and a favorable compass orientation. In December 1984 Messerli, through counsel, wrote that he could not locate a comparable parcel. He decided to insist on the Potter Marsh and Valdez parcels. He requested that DNR record his nomination of those parcels on the land records and "take no action with respect to those lands without prior written notice."

In February 1985 DNR located parcels of suitable lake front property on Diamond and Stephan Lakes. These parcels were road accessible with soils suitable for development. Messerli rejected both proposed parcels, claiming that neither parcel met his criteria.

In March 1985 the Director issued a decision closing Messerli's case file. Messerli appealed to Commissioner Wunnicke. She upheld the rejection of the Anchorage and Valdez parcels, but agreed to reopen the case file. She reasoned that the Director did not have authority to close the case because the case had not been remanded to him. She also clarified the terms and conditions of the original grant of the preference right by means of an amendment to the original decision. The amendment

(B) if the application for the preference right is filed with the director within three years from
(i) the occurrence of the error or omission;

(ii) the date of acquisition by the state of the land; or
(iii) the date of a court decision or settlement nullifying a disposal of state land.

specified that the preference right was for a single parcel of 160 acres and that the land be within those areas designated for settlement by the Plan. The nomination had to be made by August 12, 1985. If no state parcel was located by August 16, 1985 Messerli was given until August 23 to notify the director that he "wishe[d] the Director to pursue a reconveyance from the Mat–Su borough ... [of the parcels] at either Diamond Lake or Stephan Lake parcels." That paragraph concluded "there are no guarantees that the land will be reconveyed. The director shall notify Mr. Messerli by October 1, 1985 if the land will be reconveyed, or if the case is closed."

On August 12, 1985 Messerli requested reconsideration and made six selections under protest.[2] On August 16 the Director rejected selections 1 through 5 because they were not lands designated for settlement in the Plan and approved selection 6. Also on August 16, the Commissioner denied the request for reconsideration, advised Messerli of his appeal rights and stated selection 6 would be conveyed if no appeal was filed.

On August 23, 1985 DNR received a letter from Messerli's attorney dated August 22, 1985, indicating that Messerli would only accept "under protest" any selection other than the Potter Marsh or Valdez parcels, and that he intended to appeal to the superior court. The same day, the Commissioner again refused to alter the terms and conditions of the grant of the preference right, and advised that the grant would expire at 4:30 p.m. that day.

In September 1985 Messerli filed an appeal of the administrative action in the superior court, Case No. 3AN 85–13294. The appeal was assigned to Judge John Bosshard III. The appeal raised two issues. First, Messerli argued that "DNR used policies to deny Messerli the effective use of his preference rights already granted which were not properly promulgated as regulations under AS 44.62.... The failure to promulgate the policies into appro-

priate regulations and the reliance on the policies in this matter violated Messerli's due process of law." Second, Messerli argued that "DNR unlawfully and arbitrarily conditioned the exercise of Messerli's preference rights to selection of property within the Mat–Su Borough. Such condition is impossible to comply with and represents an arbitrary abuse of the director's discretion, and constitutes a denial of due process of law."

On October 4, 1985 Messerli filed a separate complaint, Case No. 3AN–85–14108, for preliminary and permanent injunctions together with a motion for a temporary restraining order (TRO) seeking to have his name placed on the public land records. This case was assigned to Judge Milton M. Souter. After a hearing on October 10, 1985 Judge Souter denied the motion for a TRO and an injunction. Messerli appeals from Judge Souter's decision.

The administrative record in Judge Bosshard's case was filed November 13, 1985. On December 13, 1985 Messerli moved to supplement his statement of points on appeal. The court denied the motion and struck the new arguments from Messerli's brief. The state filed its brief January 16, 1986 omitting discussion of the arguments which had been stricken.

On December 12, 1986 Judge Bosshard issued an opinion in the administrative appeal. The opinion affirmed in part and reversed in part decisions of DNR. Judge Bosshard clarified the decision in a later order. He found that DNR "has discretion to define the requirements of a preference right by ad hoc decision." However, he found that "the doctrine of equitable estoppel requires the DNR to provide Messerli with the opportunity to purchase state land of similar quality and quantity to that lost." Messerli was awarded costs and attorney's fees on April 17, 1987. Both parties appeal from Judge Bosshard's decisions.

---

**2.** Of the six selections, one selection comprised the Potter Marsh and Jack Bay parcels, three selections were in the Willow Sub Basin and designated for use other than settlement and two parcels were in the Plan area designated for settlement.

The appeals from both superior court cases were consolidated by order of this court in June 1987.

## III. DISCUSSION

### A. APPEAL IN CASE 3AN 85–13294

Messerli finds error with DNR's process in that DNR's Policy and Procedures Manual was not promulgated in accordance with the AAPA and in that the DNR allegedly did not document its decisions.[3] Messerli also argues DNR impermissibly placed conditions upon the preference right.

### 1. DNR Procedure, As It Related To Messerli's Case, Was Proper.

*a. The Policy & Procedures Manual is not a regulation.*

■ Messerli argues that the DNR's "Policy & Procedure's Manual" (Manual) constitutes a regulation and was not promulgated in accordance with the Alaska Administrative Procedure Act (AAPA).[4]

The state argues that the Manual had no bearing on the DNR's actions in this case. The state also implicitly argues that the Manual is not a regulation.

Under the AAPA "Regulation" is defined as:

"regulation" means every rule, regulation, order, or standard of general application ... adopted by a state agency to implement, interpret, or make specific the law enforced or administered by it, or to govern its procedure, except one which relates only to the internal management of a state agency; "regulation" does not include a form prescribed by a state agency or instructions relating to the use of the form, but this provision is not a limitation upon a requirement that a regulation be adopted under this

chapter when one is needed to implement the law under which the form is issued; "regulation" includes "manuals," "policies," "instructions," "guides to enforcement," "interpretative bulletins," "interpretations," and the like, which have the effect of rules, orders, regulations or standards of general application, and this and similar phraseology shall not be used to avoid or circumvent this chapter; whether a regulation, regardless of name, is covered by this chapter depends in part on whether it affects the public or is used by the agency in dealing with the public.

AS 44.62.640. We have interpreted the term "regulation" in *Coghill v. Boucher,* 511 P.2d 1297 (Alaska 1973); *Kenai Peninsula Fisherman's Co-op Ass'n v. State,* 628 P.2d 897 (Alaska 1981) and *Matanuska–Susitna Borough v. Hammond,* 726 P.2d 166 (Alaska 1986).

Generally we take an expansive view of the term regulation. In *Kenai Peninsula,* it was observed that the "Alaska APA goes beyond the definition of regulation contained in either [the California APA and Model State APA]." 628 P.2d at 904. Further we explained "an indicia of a regulation is that it implements, interprets or makes specific the law enforced or administered by the state agency." *Id.* at 905. "Another indicia of a regulation is that it 'affects the public or is used by the agency in dealing with the public.'" *Id.*

In most respects, the Manual at issue in this case does little to "implement, interpret or make specific" the statute. Most of the pertinent sections of the Manual merely paraphrase the statute. For example, Chapter 5115, § 00, p. 6 lists the criteria for a preference right under AS 38.05.-035(b)(2). The list is a verbatim recitation of the statute except in outline form.[5] In-

---

**3.** Alaska's Administrative Procedures Act is codified at AS 44.62.010–44.62.650.

**4.** Messerli also argues in his opening brief that the DNR failed to adopt regulations interpreting the preference right statutes, and thereby prejudiced his ability to evaluate the merits of his preference right. However, Messerli concedes in his reply brief that the DNR is not required to adopt regulations interpreting the preference

right statutes. Therefore, we do not consider this argument.

**5.** Similarly, § 01, p. 4 adds very little of substance to the statutes and common sense. Items A–D would take place with any disposal of land. *See* 11 AAC 67.002 & 67.007. Items E and F merely direct the adjudicator to the pertinent statute. Items G through N are all requirements by statute or regulation. AS 38.05.035(e) (best

deed, the *only* interpretations provided by the Manual are the definitions of "state lands," "errors and omissions," "diligent claimant," "veteran," and "heirs or devisees." Chap. 5115, § 00 p. 2. These definitions would have been significant to Messerli in applying for a preference right in the first instance. *See* AS 38.05.035(b)(2) (preference right granted to "diligent claimant" to correct "errors and omissions"). However, Messerli already has a preference right. His complaint is with the method of conditioning that right by limiting land sections. Though certain provisions in the Manual might plausibly be considered regulations, those provisions have no bearing on Messerli's case. The Manual does not interpret or make specific the preference right statute.

To the extent that the Manual bears on Messerli's case, it falls within the scope of the internal management exception to the APA because it merely lists statutory procedures for the adjudicator to follow. *Cf. Coghill v. Boucher*, 511 P.2d at 1302–03. Accordingly, any proof of violation by DNR of the AAPA would have no effect on Messerli's case.

### b.  DNR has documented its decision.

■  Messerli argues that the Director failed to document his rationale for denying Messerli's preference rights.[6] The state argues that the Director adequately documented his decision.

This court has repeatedly required "that agency decisions, in exercise of their adjudicative powers, must be accompanied by written findings and a decisional document." *Johns v. Commercial Fisheries Entry Comm'n*, 758 P.2d 1256, 1260 (Alaska 1988) (and cases cited therein). This court has strongly suggested that non-adjudicative decisions of an agency must also be supported by an adequate decisional document. *Southeast Alaska Conserva-*

*tion Council v. State*, 665 P.2d 544, 549 (Alaska 1983). The instant case is analogous to the timber sale decision in *Southeast Alaska:* In order to ensure careful and reasoned administrative deliberation and to facilitate judicial review, the decisions of DNR must be adequately documented. *Id.*

The decisions of the Commissioner and Director have been documented. While no formal decisional document was issued, letters from DNR to Messerli clearly reflect the reasoning underlying DNR's decisions. No 'best interest' finding has been made yet because no one has made a decision to convey a particular parcel of land to Messerli. Messerli's preference right was ultimately extinguished because Messerli failed to select a parcel within the Susitna Area Plan. Messerli's argument regarding lack of a decisional document is meritless.

### 2. The Commissioner Has Authority To Approve or Disapprove the Preference Right And Land Disposal Decisions of the Director.

■  Messerli argues that the Director's decision to expand the area statewide was not subject to the Commissioner's approval because former AS 38.05.035(a)(14) (now AS 38.05.035(e)) provides that the Director may approve disposals of land without the Commissioner's approval if the value is not greater than $50,000.

Messerli reasons that because his preference right allows him to purchase the newly selected land at the fair market value of the homestead land in 1959, which is $7,500, this disposal is less than $50,000. This argument is without merit. The Director can only approve and issue a contract for sale without the commissioner's approval if the appraised value of the land is less than $50,000. Messerli's selections in Anchorage and Valdez clearly have an appraised value in excess of $50,000.

interest finding, right to impose conditions, public notice); AS 38.05.035(b)(2)(A) (approval of commissioner); AS 38.05.945 (notice); 11 AAC 67.020 (survey); AS 38.05.840 (land may not be sold without an appraisal); AS 38.05.035(a)(1) (account for fees). A similar statutory basis exists for Chapter 5115, section 00, p. 3.

**6.** Messerli also contends that the trial court failed to address this argument. Messerli is wrong. The trial court addressed the argument in its order of April 17, 1987.

### 3. The Nature of Messerli's Preference Right.

The preference right statute contemplates that the land originally entered by the grantee remains available for the state to convey. AS 38.05.035(b)(2)(B). Had Messerli's homestead been available, he would have had a right to purchase that land subject to reasonable conditions (such as survey, appraisal, and reservation of mineral rights). But Messerli's original land is unavailable. We must determine the legislature's intent as to the nature of the preference right in such circumstances.

Messerli argues that the character of the preference right necessarily derives from the earlier entry. If DNR chooses to equitably compensate the entrant, it must *fully* and unconditionally compensate him for the loss of the entered land. Messerli argues that the discretion of the DNR ends with the decision to grant the preference right: DNR is without discretion to determine the nature of the preference right.

In support of this argument Messerli cites the court to a number of cases arising under different statutes. *See, e.g., City of Homer v. State, Dep't of Natural Resources,* 566 P.2d 1314 (Alaska 1977) (preference right to tidelands); *Natural Resources Defense Council v. Berklund,* 609 F.2d 553 (D.C.Cir.1980) (no discretion to deny preference right under mineral leasing act). Under the statutory schemes applied in those cases, once the applicant completes certain steps the preference right automatically follows.

In contrast, the preference right statute creates no right in the applicant. Prior to a grant, the applicant has no legal right to a preference right. Rather, the decision to grant a preference right rests in the discretion of DNR.[7] AS 38.05.035(b)(2).

■ In granting a preference right, DNR does not merely *recognize* a pre-existing right, but instead *creates* a right out of the whole cloth. Therefore, the nature of the right is not *necessarily* determined by the earlier entry. The nature of the rights created rests in the discretion of DNR. It remains for this court to consider the *extent* of the creative discretion vested in DNR by the legislature.

#### a. *DNR may condition the grant of a preference right.*

■ The Commissioner imposed the following conditions on Messerli's selection of lands: (1) a contiguous and compact tract of approximately 160 acres (2) which must be selected from those areas designated for settlement by the Susitna Area Plan. Messerli was originally given 90 days to select the parcel or risk withdrawal of the offer. Messerli was also informed that after he and the state agreed on a parcel it would be necessary to comply with appraisal and public notice. Seventeen months later the Commissioner specifically spelled out to Messerli that the preference right would be exercised on an acre for acre basis and not value for value.

The Alaska Land Act, the Alaska Constitution and this court's decisions reflect a strong policy of protecting the public interest where public land grants are concerned. For example, AS 38.05.035(e) (former AS 38.05.035(a)(14)) mandates a best interest finding before the state can dispose of public land. *See North Slope Borough v. LeResche,* 581 P.2d 1112 (Alaska 1978); *Moore v. State,* 553 P.2d 8 (Alaska 1976). Further, article VIII § 10 of the Alaska Constitution requires public notice before disposing of land. Moreover, this court has adopted the general rule that "where the language of a public land grant is subject to reasonable doubt such ambiguities are to be resolved strictly against the grantee and in favor of the government." *State, Dep't of Highways v. Green,* 586 P.2d 595, 603 n. 24 (Alaska 1978) (citing 3 C. Sands, *Sutherland Statutory Construc-*

---

7. Messerli's preference right is similarly distinguishable from that of the Homesite Law Act entrant, or Desert Land Act entrant or Soldier's Additional Homestead Rights entrant who has substantially complied with the terms of the act and is merely awaiting patent from the government. *Sabo v. Horvath,* 559 P.2d 1038, 1042 (Alaska 1976) (Alaska Homesite Law); *Roberts v. Hudson,* 25 Wyo. 505, 173 P. 786, 787 (1918) (desert land entry); *Willis v. City of Valdez,* 546 P.2d 570 (Alaska 1976) (Soldier's Additional Homestead Rights Act).

*tion* § 64.07, at 137 (4th ed. 1974)). Thus, the preference right statute should be construed in the light of the public interest.

"Since grants of public lands are instruments to serve the public welfare, they should in all cases receive a reasonable interpretation, consistent with common sense, and with a view to the objects and purposes sought to be accomplished." 3 C. Sands, *Sutherland Statutory Construction* § 64.07, at 138 (4th ed. 1974). The object of the preference right statute was to correct past governmental errors. But a more fundamental purpose, absent which Messerli's claim of inequity would not exist, is the purpose during the early days of statehood to promote the development of land. Thus, we must construe the statute in the light of the need to prevent inequity, as well as the purpose of promoting land development.

Keeping in mind the remedial nature of the statute, preference right grants must be carefully tailored to coincide with existing patterns of land ownership. There can be little doubt that the DNR must be accorded discretion to so tailor the grant of preference rights.

Whether DNR properly tailored Messerli's preference right involves agency expertise. The commissioner is charged with deciding under what circumstances preference rights will be granted. Accordingly, we apply a "reasonable basis" standard of review. *See State, Dep't of Revenue v. AMOCO Production Co.*, 676 P.2d 595, 597 (Alaska 1984).

DNR did not exceed its discretion in limiting Messerli to land within the Plan. Messerli's original homestead entry was a speculative venture in the Mat–Su Valley. To permit him now to select land anywhere in the state, especially Anchorage and Valdez, would go far beyond the intent of the preference right statute to allow fair compensation consistent with the best interests of the state.

*b. DNR need not permit the grantee to select land of "equal value" to the land originally entered.*

■ With respect to whether Messerli is entitled to land of "equal value" to his homestead, Messerli urges this court to look to other legislation concerning the grant of land to replace unavailable land. *See State v. Green*, 586 P.2d 595, 603 n. 24 (Alaska 1978) ("In some circumstances, the interpretation of one provision is properly influenced by the content of another provision addressing similar purposes or objects."), *appeal after remand, 823 Square Feet, More or Less v. State*, 660 P.2d 443 (Alaska 1983). For example, AS 38.05.870, which applies to grants after a natural disaster, provides:

> In making the designation the director shall consider the value, size and use of the land rendered unusable as a result of the natural disaster, and shall as nearly as possible grant land of equal size or value or of equal utility.

This statute gives the state a choice in whether to grant land of equal size, or value or utility. Another land selection statute which applies to exchanges of state land provides that land exchanges shall be for equal value. *See AS 38.50.020. Both statutes indicate that when the legislature intended a land selection right to entitle one to equal value, the legislature explicitly said so. Therefore, we conclude that in attempting to equitably compensate Messerli for his loss, it was within the bounds of DNR's discretion to deny Messerli a selection of equal monetary value.

The superior court held that Messerli was entitled to land of "similar quality and quantity." If that means similar utility then that holding appears to be a fair statement. However, the trial court further held that DNR "may offer Messerli equal acreage to his original homestead along with monetary compensation if the land is inferior in quality to the original land claim." That holding goes too far. Messerli has not persuaded us that he is entitled to land worth 2–3 million dollars because the homestead land is now worth 2–3 million dollars. Instead, we believe Messerli's preference right should be defined as a parcel of similar utility to the homestead in 1959. In 1959 there was no road access to the site. The site was not then

located in close proximity to other developments. The land was of "bush" character in need of the homestead incentive to encourage development.

### 4. The Trial Court Erred In Finding Estoppel Against the State.

■ In its first opinion the superior court held that "the DNR is estopped from denying Messerli the choice of relying on the [director's] decision to expand selection statewide." The court found Messerli satisfied the elements of equitable estoppel. We disagree.

■ Three requirements must be met to find estoppel against a government agency. *Municipality of Anchorage v. Schneider*, 685 P.2d 94, 97 (Alaska 1984). These requirements are as follows: (1) assertion of a position by conduct or word; (2) reasonable reliance thereon; and (3) resulting prejudice. In addition, estoppel will be enforced only to the extent justice requires. *Id.* (citations omitted).

In the instant case we believe the court erred in finding reasonable reliance by Messerli on the Director's decision to expand the search area. The statute authorizing preference rights clearly states that the Director can only act with the Commissioner's express approval. AS 38.05.-035(b)(2). Former AS 38.05.035(a)(14) required the Commissioner's consent before the Director could dispose of state land. It is presumed that Messerli knew the law. *See State v. Alaska Land Title Ass'n*, 667 P.2d 714, 725 (Alaska 1983), *cert. denied*, 464 U.S. 1040, 104 S.Ct. 704, 79 L.Ed.2d 168 (1984). Additionally, Messerli was assisted by counsel and a land consultant, Dale Tubbs, a former deputy director of the division of lands. Thus, Messerli's reliance on the Director's expansion of the search area was unreasonable. Because Messerli's reliance was unreasonable, he could not establish the elements of estoppel.

### 5. The Trial Court Did Not Err by Implicitly Finding That Messerli Had Been Denied Due Process.

■ The superior court clarified its Memorandum Opinion and Judgment at the state's request. In its order of April 17, 1987, the court modified the estoppel holding as follows: "It is more accurate to state the doctrine of equitable estoppel requires the DNR to provide Messerli with the opportunity to purchase state land of similar quality and quantity to that lost." The court rewrote this holding because it decided that although the Director acted within his authority when he expanded the search area, that authority is not exclusive but rather subject to the Commissioner's approval. Because the Commissioner did not approve the expanded search area, the court concluded the Commissioner is not now required to provide Messerli with a statewide search. Nevertheless, even the clarifying opinion estops DNR from extinguishing Messerli's preference right "until Messerli is provided with procedures which afford him due compensation for his lost homestead." Although couched in terms of estoppel this holding really is based on a denial of due process.

DNR has the authority to deny an application for a preference right; however, once it grants the right, the grantee acquires a "property right to purchase." This right may be only one stick in the bundle of sticks comprising property, but it is a right protected by due process. *Cf. City of Homer v. Campbell*, 719 P.2d 683, 684 (Alaska 1986) (interest in contract zoning of sufficient importance to warrant due process protection).

Confusing clauses are found in the Commissioner's letters of August 16 and 23, 1985. In an August 16 letter, the Commissioner first told Messerli that "parcel 6" was acceptable. The letter then states that "[i]f no appeal is filed, I intend to approve the conveyance of [parcel 6] ... after giving public notice ... and upon execution of a settlement agreement and release." Messerli wrote back on August 22 stating: "It appears to me that the Commissioner and [director] have rejected Mr. Messerli's right to select under protest.... [I]t is imperative that you contact me immediately if the intent of the commissioner and [director] ... was not to condition Mr. Messerli's selection of parcel number six based

upon a waiver by him of his rights to litigate the Commissioner's refusal to allow his selection of the Potter Marsh and Valdez property." In the August 23 letter the Commissioner wrote, "If no appeal is filed, I intend to approve the conveyance of Parcel No. 6 as stated in my letter of August 16, 1985. I believe you understand my position correctly." The letter went on to state that "if [Messerli] does not elect to exercise the preference right according to the specific terms and conditions I have specified, the grant will expire." The trial court read this correspondence as giving Messerli "no real choice." "If Messerli selected parcel 6 he would have waived the right to litigate the Commissioner's refusal to allow his selection of the Potter Marsh and Valdez properties. By litigating he is informed that he loses his preference right." Judge Bosshard concluded that putting Messerli in such a position was an abuse of discretion. We agree. A person dealing with the government should not be forced to make a Hobson's choice when rights are involved. *Cf. Webb v. State*, 756 P.2d 293, 297 (Alaska 1988) ("The constitution does not contemplate that person suspected of a crime relinquish one constitutional right in order to preserve another.")

Messerli chose to appeal the Commissioner's denial of his selection of the Potter Marsh and Jack Bay parcels. He should not be forced to forfeit his opportunity to select parcel number six as punishment for pursuing this appeal.[8]

### 6. The Trial Court's Award of Attorney's Fees.

▆▆▆▆▆▆ A superior court acting as an intermediate appellate court has broad discretion to award costs pursuant to Alaska Rules of Appellate Procedure 508. Alaska R.App.P. 508; *Rosen v. State Bd. of Public Accountancy*, 689 P.2d 478, 482 (Alaska 1984). Although Messerli was awarded costs and attorney's fees by the court, in light of our decision we believe the award should be vacated and remanded for rede-

termination. It is not clear that Messerli will be the prevailing party after remand.

### B. APPEAL FROM 3AN 85–14108

▆▆▆▆ Messerli filed the administrative appeal, 3AN 85–13294, on September 13, 1985. He filed a complaint seeking a temporary restraining order and preliminary and permanent injunctions on October 4, 1985. The complaint requested an order "enjoining [DNR] from affecting his rights to the selected properties until the issues [in the agency appeal] are finally judicially determined." The complaint also requested "an order compelling [DNR] to list Messerli's nominations on the appropriate DNR land records." The trial court denied the motion for a preliminary injunction and temporary restraining order on October 10, 1985.

▆▆▆▆ Messerli appealed the trial court's denial of his motion for a preliminary injunction and temporary restraining order. We affirm the trial court's decision. To justify a preliminary injunction: (1) the plaintiff must be faced with irreparable harm; (2) the opposing party must be adequately protected; and (3) the plaintiff must raise "serious" and substantial questions going to the merits of the case; that is, the issues raised cannot be "frivolous or obviously without merit." *Alaska Pub. Util. Comm'n v. Greater Anchorage Area Borough*, 534 P.2d 549, 554 (Alaska 1975).

At the time Messerli requested the injunction, the Potter Marsh parcel had not yet been tentatively approved to the state. Therefore the state could not encumber or alienate the land. The Valdez parcel had been tentatively approved but not yet patented to the state. The parcel had not been selected by any other entity, and it had not been designated for disposal. More importantly, as DNR points out, when the state received the patent to the Potter Marsh parcel and tried to convey the parcel to the Municipality of Anchorage, Messerli procured a stay from Judge Bosshard in the administrative appeal prohibit-

---

**8.** Thus DNR should convey selection number six to Messerli. If this land is unavailable, then DNR should allow him to resume a search for

land comparable to selection six within the conditions originally set by the Commissioner.

ing the transfer to the Municipality. Moreover, AS 44.62.570(c) and (d) and AS 44.62.560(e) allow the court to exercise its independent judgment, augment the record, hold a hearing *de novo,* or enjoin or compel agency action. *See also* Appellate Rule 609. Therefore, Messerli's interests were adequately protected by the pending administrative appeal. Thus, he would not suffer irreparable harm by the loss of these unique parcels.

## V. CONCLUSION

Based on the foregoing, we REVERSE the trial court's decision in Case 3AN 85–13294 estopping the state from denying Messerli the Potter's Marsh and Jack Bay parcels, and the trial court's decision that the preference right be value for value. We AFFIRM the trial court in its decisions regarding DNR's granting, conditioning and documentation of the preference right.[9] The award of attorney's fees is VACATED and REMANDED for redetermination in light of our decision. We REMAND to the superior court with directions to remand to DNR to convey selection number six to Messerli or allow Messerli to resume the search for a comparable parcel if selection six is unavailable.

We AFFIRM the trial court's denial of a temporary restraining order and preliminary injunction in case 3AN 85–14108.

---

9. Messerli appealed the trial court's denial of his motion to supplement the statement of points on appeal. The state and Messerli adequately briefed the merits of the issues raised in Messerli's motion. We find these issues meritless. Therefore, Messerli has not shown an abuse of discretion; "he was not deprived of a substantial right or seriously prejudiced." *Sylvester v. Sylvester,* 723 P.2d 1253, 1256 (Alaska 1986) (citations omitted). Nor do we find merit in the "cause" to which Messerli attributes his failure to identify certain issues. *See* Alaska R.App.P. 210(e).