Nansen OLSON and Dana Olson, Appellants,

v.

STATE of Alaska, DEPARTMENT OF NATURAL RESOURCES, Appellees.

Nos. S–3246, 3AN–87–8270 CI and 3AN–88–1497 CI.

Supreme Court of Alaska.

Aug. 3, 1990.

Rehearing Denied Aug. 30, 1990.

---

David Rankine and Ella Stebing, Law Offices of William L. McNall, Anchorage, for appellants.

Nansen Olson, Wasilla, pro se.

Madeleine R. Levy and Bonnie Harris, Asst. Attys. Gen., Anchorage, and Douglas B. Baily, Atty. Gen., Juneau, for appellees.

Before MATTHEWS, C.J., and RABINOWITZ, BURKE, COMPTON and MOORE, JJ.

## OPINION

MOORE, Justice.

This appeal from a decision of the Department of Natural Resources ("DNR") denying Nansen and Dana Olson's requests for preference rights is the second time we have been faced with questions arising from the proposed Chase III homestead land disposal. In *Alaska Survival v. State*, 723 P.2d 1281 (Alaska 1986), we invalidated the disposal on procedural grounds. Now, the Olsons, successful participants in the Chase III lottery, argue that their losses in the demise of Chase III entitle them to preference rights to purchase their Chase III parcels. Because DNR did not abuse its discretion when it denied the Olsons' requests for preference rights, and it did not deny the Olsons due process, we affirm.

## I.

Throughout the early 1980s, DNR planned the Chase III disposal of agricultural land under the Homestead Act. AS 38.09. DNR agreed with a group of local residents calling itself Alaska Survival to delay opening Chase III to staking[1] pending resolution of Alaska Survival's challenge to its plans. On September 14, 1984, shortly after this agreement, DNR conducted a lottery to dispose of the thirty-two parcels in Chase III. Both Nansen and Dana Olson were selected to receive staking authorizations. DNR informed them by letter that unless and until Alaska Survival's challenge was resolved in favor of DNR, they could not stake or otherwise improve their homesteads. The letters also indicated that the Olsons could participate in other homestead offerings although they could hold only one staking authorization at a time.

After the superior court rejected the challenge to the disposal, DNR notified the Olsons that they were granted "entry authorization."[2] This authorization gave the Olsons permission to stake, flag, and brush[3] the boundaries of their homesteads, but not to occupy permanently, survey,[4] or improve the land. Nansen purchased surveying equipment costing about $1000 that he believed was necessary to stake the property. He also prepared a soil and water conservation plan. On the effective date of the staking authorizations, April 13, 1985, Nansen staked his parcel, and on April 15, 1985, he applied for a homestead entry permit. Dana prepared a soil and water conservation plan, and as soon as she was permitted to do so, located and staked three of the four corners of her parcel.

On April 15, 1985 the superior court issued an order closing Chase III to entry pending an appeal to this court. DNR advised the Olsons of the injunction and noted that a final decision in the near future was unlikely. DNR also informed the Olsons that they were "eligible to participate in other state land offerings," but if they chose to stake different parcels, they would have to relinquish their Chase III parcels. The *State Land Disposal Brochure* for the summer of 1985 contained a statement that "[w]inners of entry authorizations for ... Chase III ... must relinquish their rights to that entry authorization before they can be eligible to participate in any homestead offering...." However, DNR notified the successful participants in the Chase III lottery by letter that the brochure was in error. Chase III winners could participate in other lotteries without relinquishing their Chase III staking authorizations, but their Chase III authorizations would be extinguished if they received a staking authorization in another lottery.

On August 29, 1986, we reversed the superior court and invalidated the lottery on the ground that DNR classified the Chase land for homesteading before developing a regional land use plan as required by AS 38.04.065. *Alaska Survival*, 723 P.2d at 1288–91. After an unsuccessful attempt to remedy the defects in the Chase III lottery by statute, DNR closed the Olsons' homestead application files and refunded Nansen's entry permit application fee.

On May 15, 1987, Nansen applied to purchase his Chase III parcel by preference right under AS 38.05.035(b)(2).[5] The Di-

---

**1.** AS 38.09.020(b) provides that "[a]n applicant for a homestead entry permit shall personally stake the corners and flag the boundaries of the land entered under this chapter and shall personally file with the commissioner a description of the land entered."

**2.** This is evidently what the applicable regulations call "staking authorization." *See* 11 AAC 67.138(b).

**3.** " 'Brush' means to clear a swath along the boundary lines of a homestead entry so that the boundary lines may be identified from the ground." AS 38.09.900(1).

**4.** The survey of a homestead must meet numerous technical requirements and is distinct from the mere act of identifying the boundaries of the homestead. *See* 11 AAC 67.146.

**5.** AS 38.05.035(b)(2) provides that the director of the DNR Division of Lands may:

grant preference rights for the lease or purchase of state land without competitive bid in order to correct errors or omissions of a state or federal administrative agency when inequitable detriment would otherwise result to a diligent claimant or applicant due to situations over which the claimant or applicant

rector of the DNR Division of Lands ("Director") together with the DNR Commissioner ("Commissioner") denied his request on the grounds that (1) he had no vested interest in the land and thus did not suffer inequitable detriment, and (2) without a regional land use plan the grant would not be in the best interest of the state. Nansen asked the Commissioner to reconsider his case, and the Commissioner agreed. The Commissioner denied his application on the grounds that (1) he possessed no interest in the land and thus did not suffer inequitable detriment, and (2) AS 38.09.-010(d) prohibits the grant of preference rights in land designated for homestead entry.

Dana applied for a preference right in her Chase III parcel on July 2, 1987. The Director and Commissioner denied her application on the same grounds that the Commissioner relied on in denying Nansen's application upon reconsideration. The Commissioner refused to reconsider the decision in Dana's case.

The Olsons separately appealed the DNR decisions to the superior court which consolidated the actions and affirmed the DNR decisions. The Olsons appealed, arguing that they did suffer inequitable detriment, that AS 38.09.010(d) does not prohibit granting preference rights in land designated for homestead entry, and that DNR denied them due process by relying upon evidence not in the record.

## II.

In *Messerli v. Department of Natural Resources*, 768 P.2d 1112, 1120 (Alaska 1989), we held that once the Commissioner decides to grant a preference right, we will apply the reasonable basis standard of review to the question whether the terms on which that preference right

was granted are permissible. Here, the question is whether DNR should have granted the Olsons preference rights. Because we should employ the same standard of review in answering both questions, our holding in *Messerli*, if correct, would compel us to determine in this case whether there was a reasonable basis for DNR's decision. However, we employed the incorrect standard of review in *Messerli*.

Administrative agencies may perform functions analogous to those performed by all three branches of government. Sometimes, their actions are quasi-legislative. The Administrative Procedure Act ("APA") provides procedures for the adoption of regulations by agencies, AS 44.62.180–.290, and we have prescribed standards for reviewing regulations so adopted. *E.g., Kelly v. Zamarello*, 486 P.2d 906, 908–11 (Alaska 1971). Agencies also may act in ways that might be described as quasi-judicial. The APA provides procedures for formal adjudication by agencies, AS 44.62.-330–.630, and we have adopted standards for reviewing the decisions in agency adjudications. *E.g., Kjarstad v. State*, 703 P.2d 1167, 1170 (Alaska 1985); *Rose v. Commercial Fisheries Entry Comm'n*, 647 P.2d 154, 161 (Alaska 1982); *Keiner v. City of Anchorage*, 378 P.2d 406, 411 (Alaska 1963).

Agencies often make discretionary decisions not requiring formal procedures. We have described these decisions as quasi-executive.[6] We have not always been altogether clear in discussing the appropriate standard of review for such decisions. In *Kelly*, we held that the reasonable basis standard of review applies to such decisions because they involve agency expertise. 486 P.2d at 917. Later, in *Jager v. State*, 537 P.2d 1100, 1107 (Alaska 1975), we correctly observed that such actions are

had no control; the exercise of this discretionary power operates only to divest the state of its title to or interests in land and may be exercised only

  (A) with the express approval of the commissioner; and

  (B) if the application for the preference right is filed with the director within three years from

    (i) the occurrence of the error or omission;

    (ii) the date of acquisition by the state of the land; or

    (iii) the date of a court decision or settlement nullifying a disposal of state land;

6. *Kelly*, 486 P.2d at 916–17. A decision such as that in this case which determines the rights or duties of individuals may perhaps more accurately be described as an informal adjudication.

reviewed under the arbitrary and capricious standard. However, in the same portion of that opinion we also discussed the reasonable basis standard, *id.*, and then purported to apply the "'reasonable and not arbitrary' standard *for review of administrative regulations.*" 537 P.2d at 1108 (emphasis added). In subsequent cases we have articulated the correct standard more clearly. We review discretionary actions that do not require formal procedures under the arbitrary and capricious or abuse of discretion standard.[7] We departed from this rule in *Messerli* by applying the reasonable basis standard of review applicable in appeals of formal agency adjudications of questions of law involving agency expertise. 768 P.2d at 1120. The deferential abuse of discretion standard of review is proper in appeals of discretionary acts not requiring formal procedures because it allows agencies latitude to act that is commensurate with their discretion.

Granting preference rights is within the discretion of the Director. *Messerli*, 768 P.2d at 1119; AS 38.05.035(b)(2). The APA does not require formal adjudication of applications for preference rights. *See* AS 44.62.330(a). Therefore, preference rights decisions should be reviewed under the arbitrary and capricious or abuse of discretion standard.

### III.

■ We turn next to the question whether the Director and Commissioner abused their discretion in determining that the Olsons did not suffer inequitable detriment. There is no doubt that the Olsons are not as well off as they would have been if we had allowed development of Chase III to proceed: they lost the opportunity to enter their Chase III homesteads. Moreover, the Olsons suffered some loss in reliance on the outcome of the invalid lottery. Both spent a weekend staking the corners of their parcels. Both prepared soil and wa-

ter conservation plans, although they were not required to do so at such an early stage of the homesteading process. *See* 11 AAC 67.155(a). Nansen spent approximately $1000 to purchase surveying equipment, although that equipment presumably could be sold or used to survey other land. On the basis of these losses, the Olsons argue that they must be granted preference rights to their Chase III parcels. However, we believe that DNR did not abuse its discretion in determining that these losses did not amount to inequitable detriment.

■ The Olsons argue that DNR equated inequitable detriment with deprivation of a constitutionally-protected interest. They believe that doing so would constitute reversible error. There is some basis for believing that DNR defined inequitable detriment in just this way. For example, the Commissioner observed that "[i]n Mr. Olson's case, inequitable detriment would be the result of the department's action to improperly, and without the protection of Mr. Olson's constitutional rights, deprive Mr. Olson of some right he possesses."

We do not believe that DNR equated inequitable detriment with deprivation of a constitutionally-protected interest.[8] The Director's decisions were based on the ground that the Olsons were not injured sufficiently to entitle them to a preference right because they had no legal interest in the land, invested very little time or money in the homesteading process, and frequently were advised of their status and rights. That the Commissioner in her affirmance of the Director's decision upon reconsideration of Nansen's case chose to focus on one of the ways in which Nansen was not injured by the demise of Chase III does not diminish the Director's conclusion that Nansen was not injured sufficiently to receive a preference right. The Director and Commissioner were correct that the Olsons were injured very little. Since it is primari-

---

7. *E.g., North Slope Borough v. LeResche*, 581 P.2d 1112, 1115 (Alaska 1978). This is also the federal rule. *E.g., Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 415–16, 91 S.Ct. 814, 823–24, 28 L.Ed.2d 136 (1971); *Starr v. FAA*, 589 F.2d 307, 310–11 (7th Cir.1979).

8. We express no opinion on the question whether it would be an abuse of DNR's discretion to adopt such a rule of decision.

ly the prerogative of DNR to determine the quantum of injury that constitutes inequitable detriment, DNR did not abuse its discretion in denying the Olsons' requests for preference rights.

The Olsons cite a number of prior DNR grants of preference rights and claim that these decisions are precedents which compel grants of preference rights to them. As DNR describes, most of these involved different preference right or disposal programs. All the parties had greater rights in the land, had spent more time living on or improving the land, or received less forthright treatment from the government. The only one of these decisions that might conflict with the DNR decisions in the Olsons' cases is the decision in the Potlatch Ponds case. There, we invalidated a disposal of land sale contracts on procedural grounds, *State v. Weidner*, 684 P.2d 103 (Alaska 1984), and DNR granted preference rights to successful participants in the lottery conducted while the court challenge was pending. While the lottery winners had no legal rights in their property and no investment of time or money, it appears that during the four years that the legal challenge to the lottery was pending DNR prevented them from participating in other lotteries without first relinquishing their Potlatch Ponds parcels. The Olsons were not so prevented. In fact, with one exception that was quickly remedied, DNR consistently advised the Olsons that they could and perhaps should participate in other lotteries.

Since DNR did not abuse its discretion in determining that the Olsons did not suffer inequitable detriment and therefore were not entitled to preference rights, we have no occasion to address the Olsons' challenge to the alternative ground for DNR's decision.

## IV.

■ The Olsons argue that DNR improperly relied upon evidence not in the record and thus denied them due process. When an agency is required to make findings of fact supported by substantial evidence on the whole record, the facts found must be based on evidence in the record. *City of Fairbanks v. A.P.U.C.*, 611 P.2d 493, 495 (Alaska 1980). This is a fundamental principle of administrative law. A distinctly different although related constitutional principle is that when an agency decision is purportedly based upon a record, "[a]gency reliance on evidence not in the record is a fundamental defect amounting to a failure of due process." *Department of Corrections v. Kraus*, 759 P.2d 539, 541 (Alaska 1988) (citing *Fairbanks*, 611 P.2d at 495).

■ DNR was obligated not to rely upon evidence not in the record and thus not subject to challenge. To the extent that the specific errors the Olsons cite are not instances of reliance on evidence not in the record but assertions that the evidence in the record does not support DNR's findings, these assertions are only relevant to the inquiry whether DNR abused its discretion. The Olsons cite two instances where DNR might have relied upon evidence not in the record. First, the Director's decision in Nansen's case indicates that "[i]t is rather doubtful that Mr. Olson needed to spend $1,000 to stake his parcel...." This premise was not at all necessary to either the Director's or the Commissioner's conclusion that Nansen did not suffer inequitable detriment. Second, the various DNR decisions state or imply that DNR informed Chase III lottery participants of the *Alaska Survival* case before the lottery. While there is no evidence in the record of such notice, DNR did not rely upon this fact. Whether there was an announcement of the *Alaska Survival* case before the lottery is in any event immaterial, since the record clearly demonstrates that the letters notifying the Olsons that they received staking authorizations in the lottery explained that all further development was contingent upon a favorable resolution of the *Alaska Survival* litigation.

In addition, the Olsons believe that DNR improperly concluded that grants of preference rights would not be in the public interest without there being any basis for that conclusion in the record and without any explanation of its decision. Not only is the propriety of this supposed finding not prop-

erly before us because it was not a basis for the final decision in either case, but we ordered that a new public interest finding be made before Chase III development proceeded. *Alaska Survival,* 723 P.2d at 1291. DNR simply echoed this requirement.

Since DNR did not abuse its discretion in denying the Olsons' applications for preference rights and did not improperly rely upon evidence not in the record in doing so, the decision of the superior court is AFFIRMED.