**B.C. LONGWITH, Appellant,**

v.

**STATE of Alaska, DEPARTMENT OF NATURAL RESOURCES, Trustees for Alaska, Northern Alaska Environmental Center, Chena Hot Springs Road Residents Association, James C. Weidner, and Steve Sunderlin, Appellees.**

No. S–4476.

Supreme Court of Alaska.

Dec. 11, 1992.

Rehearing Denied March 9, 1993.

Robert John, Law Offices of William R. Satterberg, Jr., Fairbanks, for appellant.

Sharon Sturges, Randall Weiner, Trustees for Alaska, Anchorage, Stephan Williams, Fairbanks, for appellees Trustees for Alaska, et. al.

Cameron Leonard, Asst. Atty. Gen., Fairbanks, and Charles E. Cole, Atty. Gen., Juneau, for appellee State of Alaska, Dept. of Natural Resources.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

RABINOWITZ, Chief Justice.

### INTRODUCTION

This case concerns the grant by the Commissioner of the Department of Natural Resources of preference rights to B.C. Longwith. Longwith was a "winner" of a parcel of land in the Potlatch Ponds land lottery, which was permanently enjoined in *State v. Weidner*, 684 P.2d 103 (Alaska 1984). After the lottery was enjoined, the Commissioner granted Longwith preference rights to the same parcel that he "won" in the lottery and Trustees for Alaska challenged the grant of preference rights in the superior court.

### FACTS AND PROCEEDINGS

In 1980, the State Department of Natural Resources (DNR) offered approximately 14,000 acres of land located within the Fairbanks North Star Borough (Borough) for disposal as agricultural lands. The lottery sale was known as the Potlatch Ponds lottery and was designed to dispose of 61 parcels of state land to lottery "winners" for agricultural use. Weidner and other landowners in the Potlatch Ponds area, as well as a local residents' association,

sought a preliminary injunction to prevent the lottery sale. The superior court granted the preliminary injunction but allowed the Department of Natural Resources to go forward with the lottery to identify the "winners" for administrative efficiency and convenience pending the outcome of the challenge to the lottery sale. The superior court's order granting the preliminary injunction expressly provided that the State could not transfer or convey any right, interest or title in the properties to successful applicants pending the outcome of the litigation and that successful applicants would receive no rights or interests in the lottery parcels. In accordance with this order, the lottery was held and successful applicants identified. *State v. Weidner*, 684 P.2d 103, 107 (Alaska 1984). Thereafter, the superior court granted summary judgment in favor of Weidner on five issues and permanently enjoined the disposal of the Potlatch Ponds parcels.[1] On appeal, we affirmed the superior court's grant of summary judgment and its entry of a permanent injunction. *Id.* at 114. We held that the DNR's failure to comply with the Borough's planning requirements and the statutory requirements of a fair market value sale invalidated the Potlatch Ponds lottery. *Weidner*, 684 P.2d at 111, 112–113. The superior court's grant of summary judgment on the issue of whether improper legislative influence tainted the DNR's classification of the lands as agricultural lands and the subsequent disposal of the lands was reversed because we determined that genuine issues of material fact existed concerning this issue of alleged improper legislative interference. *Id.* at 108.

In 1985, the Director of the Division of Land and Water Management (Director) determined that because the DNR "precluded the apparent 'winners' from participating in lotteries held after the Potlatch Ponds lottery," each winner who had not relinquished a claim would be accorded "the right to apply for a preference right of purchase for the agricultural interests to the Potlatch Ponds parcel each originally claimed, or another parcel of similar size or value, pursuant to AS 38.05.035(b)(2)." The Commissioner, in implementing the Director's decision, concluded that the DNR would not reoffer the Potlatch Ponds parcels. In her March 25, 1987 decision, the Commissioner stated:

This decision is based on the following uncertainties and factors:

a. Reassessment of soils within the area by the Soil Conservation Service identified potentially serious problems for proper land development.

b. Unforeseen regulatory requirements due to wetlands designations by the Corps of Engineers, such as the cumulative impact studies to show the results from road development, clearing, drainage, and farm development of the parcels.

c. Mental Health lands within the disposal area are unavailable because, due to the Weiss Decision, they must be managed differently than state general selection lands.

d. Future obligations to the State for road construction and maintenance.

e. Fairbanks North Star Borough survey requirements for legal and buildable access which is estimated at $600,000.

---

1. As recapitulated in *State v. Weidner*, 684 P.2d 103, 107 (Alaska 1984) the superior court found:

[T]here was a reasonable basis for the disposal decision by the Commissioner of the DNR, but granted summary judgment in favor of Weidner on five issues, holding: (1) the DNR, contrary to AS 38.04.065 (Supp.1980), failed to develop land use plans prior to classification of the land as agricultural; (2) the lottery contravened the disposal schedule mandated by AS 38.05.047 (Supp.1980); (3) the Commissioner's classification decision was subject to improper legislative interference and, there-

fore, was not an independent, reasoned decision; (4) the DNR violated borough subdivision requirements; and (5) the sale violated AS 38.05.300 (Supp.1980), by closing certain parcels larger than 640 acres to multiple purpose use. The court denied Weidner's claim that the $100 per acre figure set by the state violated the prohibition against disposing of state land for less than its fair market value. Intervention by the lottery winners was denied except as to count IV of Weidner's complaint.

(Footnote omitted.)

f. Budgetary reductions and lack of capital improvement funds.

This decision adopted a procedure to implement the preference right application process and delegated authority to grant or deny preference rights pursuant to AS 38.05.035(b)(2) to the Northern Regional Manager of the Division of Land and Water Management (Manager).

In April 1987, B.C. Longwith, a "winner" in the Potlatch Pond lottery received notice from the Manager that the Potlatch Ponds agricultural lands would not be reoffered as a project, but that he was entitled to apply for a preference right to "the agricultural interests to the Potlatch Ponds parcel ... originally claimed" or an alternative parcel of state land. In response, Longwith requested a preference right to the agricultural interests to the Potlatch Ponds parcel for which his name was drawn in the invalidated land sale lottery. The Director denied Longwith's application for preference rights to the original Potlatch Ponds parcel, concluding that the disposal of the parcel "is not in the state's best interest because development of the parcel as required does have the potential to create serious environmental impacts to the parcel and development of access will disturb wetlands."[2] The decision allowed Longwith to amend his application for a preference right to an alternative parcel of state land. Longwith did not amend his application and filed an appeal of the Director's denial of a preference right to the Potlatch Ponds parcel with the Commissioner of the DNR.

In a decision dated April 6, 1988, Commissioner Brady of the DNR reversed the Director's decision that conveyance of the Potlatch Ponds parcel to Longwith was not in the State's best interests and directed the Division to convey agricultural interests in that parcel to Longwith. Trustees for Alaska ("Trustees") then appealed the Commissioner's decision to the superior court.[3] Upon the DNR's motion, Longwith and Marlene Robinson were joined as appellees.[4] The superior court subsequently invalidated the Commissioner's grant of preference rights in the Potlatch Ponds lands that Longwith and Robinson "won," finding that Commissioner Brady abused her discretion by relying on a classification for an invalidated land lottery. The superior court also held that the Commissioner erred in granting Longwith and Robinson residency discounts because the statutory provision allowing these discounts was repealed and because the provision contravened the clear legislative intent that preference rights be granted at fair market value only. Longwith appeals.

In his appeal to this court Longwith argues that the Commissioner did not abuse her discretion by granting him agricultural preference rights. Trustees reply that the superior court correctly ruled that the Commissioner's preference rights decision was arbitrary and capricious. Trustees also advance several alternative bases for affirming the superior court's decision in-

**2.** The Director explained the denial of preference rights in the Potlatch Ponds parcel as follows:

1. The disposal of the agricultural rights on this parcel to Longwith is not in the state's best interest because development of the parcel as required does have the potential to create serious environmental impacts to the parcel and development of access will disturb wetlands.

2. No injustice will be caused Mr. Longwith by not granting him a preference right on this parcel, as there is [sic] other state agricultural lands available as well as fee simple parcels as identified in the selection pool available to each Potlatch Ponds parcel winner who participated in this preference right option.

3. Mr. Longwith qualifies for a preference right and is hereby allowed to amend his application within 60 days of receipt of this

decision, to choose an available alternate parcel of state land from the May 9, 1987 Potlatch Pond Selection Pool List.

**3.** Trustees appealed on behalf of itself, Northern Alaska Environmental Center, Chena Hot Springs Road Residents' Association, James C. Weidner and Steve Sunderlin.

**4.** The appeal in the superior court also concerned the preference rights granted to Marlene Robinson, another lottery "winner." Robinson was denied a preference right to her Potlatch Ponds parcel by the Director. Robinson appealed, and like Longwith, was later granted her parcel by the Commissioner. However, neither Robinson nor the DNR appealed the superior court's decision invalidating the grant of preference rights in the Potlatch Ponds parcel.

validating the preference rights conveyance to Longwith. The most significant of these alternative arguments is that Longwith incurred no inequitable detriment and that any inequitable detriment incurred by Longwith was due solely to his own actions and decisions.

DISCUSSION

## I. DID THE COMMISSIONER ABUSE HER DISCRETION BY GRANTING LONGWITH PREFERENCE RIGHTS TO THE LANDS IN QUESTION?

### A. Was the Commissioner correct in concluding that Longwith was entitled to preference rights?

■ Trustees argue that the Commissioner exceeded her discretion in granting Longwith preference rights.[5] Trustees further argue that the statutory requirements for the grant of preference rights should be construed strictly in accordance with "basic public interest in appropriate use and development of state lands" and that the "preference rights scheme is not intended substitute for—or allow an unfettered 'end run' around—the constitutional and statutory requirements for the rational classification and disposal of state land. [sic]" *See Messerli v. Department of Natural Resources*, 768 P.2d 1112, 1120 (Alaska 1989). We find Trustees' argument persuasive.

The Commissioner granted preference rights in the instant case under AS 38.05.-035(b)(2) which provides in relevant part:

The director may

(2) grant preference rights for the lease or purchase of state land without competitive bid in order to correct errors or omissions of a state or federal administrative agency when inequitable detriment would otherwise result to a diligent claimant or applicant due to situations over which the claimant or applicant had no control....

Subsection (e) of the same provision requires that no less than 21 days before the sale "the director shall make available to the public a written finding that sets out the facts and applicable law upon which the determination that the sale, lease or other disposal will best serve the interests of the state was based." AS 38.05.035(e).

Trustees argue that the Director failed to make the necessary findings for the conveyance of preference rights, namely, that Longwith suffered an inequitable detriment at the hands of DNR and that a grant of preference rights is in the best interest of the State. In his written decision granting preference rights to Potlatch Ponds lottery "winners," Director Tom Hawkins made the following findings:

1. In accord with the Supreme Court decision in *Weidner v. Alaska*, the state erred in offering parcels within the Potlatch Pond disposal because of a failure to obtain Fairbanks North Star Borough platting approval.

2. The claimants of the Potlatch Pond parcels had no control over the process which kept them from obtaining the agricultural interest to the land.

3. Those claimants who did not relinquish their "rights" have shown diligence in pursuing their claim.

4. Inequity has resulted because the state erred, invalidating the lottery.

Trustees correctly argue that "[t]he Director's suggestion that the invalidation of the lottery created an undefined 'inequity' does not support the different, necessary finding that Longwith suffered 'inequitable detriment.'" Longwith could not have suffered any inequitable detriment from the invalidation of the lottery because at the time his name was chosen for a Potlatch Ponds parcel, the superior court had issued a preliminary injunction expressly providing that the lottery would be conducted solely for administrative efficiency and that

---

**5.** Whether to grant a preference right is within the discretion of the director, as provided in AS 38.05.035(b)(2), and is thus subject to review under the arbitrary and capricious or abuse of discretion standard. *Olson v. State, Dept. of Natural Resources*, 799 P.2d 289, 293 (Alaska 1990). However, the interpretation of the statutory requirements for the grant of preference rights does not involve agency expertise. This court reviews issues of statutory interpretation under the substitution of judgment standard. *Madison v. Alaska Dept. of Fish and Game*, 696 P.2d 168, 173 (Alaska 1985); *Kelly v. Zamarello*, 486 P.2d 906, 917 (Alaska 1971).

lottery "winners" would not acquire any rights or interests in any Potlatch Ponds parcels as a result of the lottery.

The Director stated in his decision that "DNR precluded the apparent 'winners' from participating in lotteries held after the Potlatch Ponds lottery, and prior to the Supreme Court decision." Thus, the key issue in the case is whether the DNR's requirement that the lottery "winners" relinquish their "rights" to their Potlatch Ponds parcel in order to participate in future land disposals caused Longwith to suffer an inequitable detriment sufficient to support a grant of preference rights under AS 38.05.035(b)(2). Trustees appropriately note that as a matter of law, Longwith was not precluded from participating in other land disposals because AS 38.05.057(b)(3) precludes participation only when an individual actually "purchased" lands in a disposal. Additionally, Trustees accurately contend that Longwith could not have suffered an inequitable detriment because to suffer a "detriment," a person must have "forborne some legal right which he otherwise would have been entitled to exercise, or that he has given up something which he had a right to keep, or done something which he had a right not to do" in reliance on the promises of another. Trustees conclude that Longwith acquired no rights to a lottery parcel and thus "did not change his legal position based on any lawful actions of DNR." Since Longwith had the ability to participate in other land disposals he thus did not suffer any inequitable detriment as that term is used in AS 38.05.-035(b)(2).

Trustees further argue that assuming inequitable detriment has been shown, then the statute was not satisfied in this case. AS 38.05.035(b)(2) requires that the inequi-table detriment be due "to situations over which the claimant or applicant had no control." The only finding of "no control" made by the Director pertains to the invalidated lottery process. Relying on *Messerli*, 768 P.2d at 1122, Longwith claims that he was faced with a "Hobson's choice" because he was required to forfeit his rights to participate in future state land disposals in order to "maintain his right to pursue and obtain any fruits of an appeal to this court." However, as Trustees correctly point out, *Messerli* is inapposite because in that case the DNR Commissioner informed Messerli that if he litigated the Commissioner's refusal to grant him a preference right to two specific parcels of land, he would lose his preference right to an alternative parcel selected by the Commissioner. 768 P.2d at 1122. This situation resulted in an inequitable detriment because in order to exercise his right to appeal, Messerli was required by the Commissioner to waive his preference right.[6] In the instant case, Longwith was faced with a choice of whether to pursue his winning status in the Potlatch Ponds parcel, to which he had no "right," or to participate in future land disposals. As Trustees note Longwith voluntarily made the decision to forego participation in subsequent lotteries (with no assurance that he would be a winner in any of these subsequent lotteries) and that "any resulting detriment was solely due to his own actions."

Thus, we conclude that the Commissioner abused her discretion in granting preference rights to Longwith. On the basis of the preceding discussion we hold that Longwith failed to meet two separate criteria of AS 38.05.035(b)(2) for the granting of preference rights. More particularly, Longwith did not sustain an "inequitable

**6.** Longwith argues that in *Olson v. State, DNR,* 799 P.2d 289 (Alaska 1990), this court distinguished the DNR's grant of preference rights in *Olson,* stating in dicta that:

The only one of these decisions which might conflict with the DNR decisions in the Olsons' cases is the decision in the Potlatch Ponds case.... While the lottery winners had no legal rights in their property and no investment of time or money, it appears that during the four years that the legal challenge to the lottery was pending DNR prevented them from participating in other lotteries without first relinquishing their Potlatch Ponds parcels.

799 P.2d at 294. However, this statement is not dispositive in that it defines inequitable detriment too broadly, and gives insufficient weight to the fact that the Potlatch Ponds participants suffered no inequitable detriment because they acquired no rights in lottery parcels that they could be required to waive.

detriment" since the superior court, at the outset, ruled that the lottery "winners" (determined only for purposes of administrative efficiency) did not acquire any rights or interests in any Potlatch Ponds parcels as a result of the invalidated lottery. Further, with full knowledge of the superior court's ruling Longwith, who was not precluded from participating in any subsequent land lotteries, made the decision to refrain from participating in future lotteries in the hope that his winning status would be affirmed on appeal. In terms of AS 38.05.035(b)(2) this is clearly a situation over which Longwith had in fact exercised control since he made the choice not to participate in future land lotteries after he had been apprised of the superior court's ruling that he had no interest in the Potlatch Ponds parcels.

## II. DO TRUSTEES HAVE STANDING TO CHALLENGE THE COMMISSIONER'S GRANT OF PREFERENCE RIGHTS?

■ Given our holding that the Commissioner abused her discretion in granting preference rights to Longwith in the Potlatch Ponds acreage in question we need address only one additional issue. Longwith challenges Trustees' standing to question "the Commissioner's decision to grant Longwith an agricultural interest in the Potlatch Ponds parcel." Trustees reply, first, that because the issue of standing was not raised in the superior court, it should not be heard on appeal. Second, Trustees argue that they have standing "both as participants in the administrative process and on public interest grounds." We have interpreted standing broadly to allow access to the courts where the party has "a sufficient personal stake in the outcome of the controversy." *Moore v. State,* 553 P.2d 8, 23 (Alaska 1976); *see also Gilman v. Martin,* 662 P.2d 120 (Alaska 1983); *Trustees for Alaska v. State,* 736 P.2d 324 (Alaska 1987), *cert. denied,* 486 U.S. 1032, 108 S.Ct. 2013, 100 L.Ed.2d 601 (1988);

*State v. Weidner,* 684 P.2d 103, 110 (Alaska 1984).

Longwith relies on *Hoblit v. Commissioner of Natural Resources,* 678 P.2d 1337 (Alaska 1984), which held that Hoblit did not have standing to challenge the DNR's grant of a preference right to 20 acres of land as a taxpayer because the amount of land disposed of by the state was not "significant" under *Gilman v. Martin,* 662 P.2d 120, 123 (Alaska 1983). Factual differences exist between this case and *Hoblit.* The Potlatch Ponds parcel at issue is roughly 585 acres, which is "significant" in comparison to 20 acres. Longwith fails to appreciate the implications of *Hoblit's* other holdings. Longwith neglects to mention that we did not foreclose all bases for standing and remanded the case to determine whether Hoblit could demonstrate sufficient injury in his status as a neighboring landowner or as a participant under the Administrative Procedures Act. 678 P.2d at 1342. We reject Longwith's contention that Trustees failed to participate in the administrative proceeding. Study of the record discloses that Trustees participated in the comment process through Weidner. In the instant case, Trustees asserts the interests of local landowners, participants in the administrative process, and the public's interest in the sound disposition and management of State lands. Trustees contends that the issues of this case are of particular concern to the public, explaining, "[t]here is a strong public interest in decisions affecting State lands, rooted in Alaska's Constitution, which requires strict adherence to statutory requirements governing the grant of preference rights to State lands."[7] Review of the record fully supports the grounds Trustees have advanced in support of standing. We therefore hold that Trustees has demonstrated a sufficient stake in the outcome of this case to confer standing. *See State v. Weidner,* 684 P.2d at 110; *Trustees for Alaska v. State,* 736 P.2d at

---

**7.** Article VIII, § 10 of the Alaska Constitution provides:

No disposals or leases of state lands, or interests therein, shall be made without prior public notice and other safeguards of the public interest as may be prescribed by law.

327–29; *Gilman v. Martin,* 662 P.2d at 123.

The superior court's invalidation of the Commissioner's grant of preference rights to Longwith in the Potlatch Ponds land is AFFIRMED.